## HIRAM PARTEE VS. H. L. BEDFORD, Adm'r.

1. VENDOR AND VENDEE: *Note of a third party; effect thereof.*

   Whether the transfer of a note at the time of the purchase of property shall operate as collateral security or absolute payment, is purely a matter of agreement, and the intention of the parties with reference thereto must determine. In the absence of any agreement to the contrary, express or implied, the transfer and delivery of a note at the time of the purchase of property is presumed a payment; but, if it be for an antecedent debt, it is only a conditional payment.

2. DECREE OF CHANCELLOR: *Conclusiveness thereof.*

   The presumption in favor of a decree reaches the conclusions upon both the law and the facts. The decree will not be disturbed unless shown to be against the weight and preponderance of evidence, or without sufficient competent evidence. In this it is analagous to the verdict of a jury, but not, like the verdict of a jury, conclusive.

[NOTE. — The court review the cases of Davis *v.* Richardson and May, 45 Miss., and Apple *v.* Ganong, 47 id., and say that nothing more was meant by the language used in those cases than that the decision of the chancellor on the evidence is presumptively correct, and that it would not be disturbed unless opposed by the weight of evidence.]

APPEAL from the Chancery Court of *Panola* County.

Hon. J. F. SIMMONS, Chancellor.

The facts in this case are very fully stated in the opinion of the court.

It is assigned for error that the court granted the relief prayed for in the bill of complainant, and in refusing the relief prayed for in defendant's cross bill, and in dismissing the cross bill.

*White & Chalmers*, for appellant:

It is evident from the facts and circumstances that Bobo's note was taken as absolute payment of the amount represented by it, and not as collateral security or conditional payment. The legal title was reserved to protect the unpaid purchase money, which was represented by Partee's two notes at one and two years. If the testimony leaves the intention of the parties in doubt, then, as we conceive, the law presumes (in this case) the payment was absolute, and this legal presumption must determine the issue. Where, contemporaneous with the purchase of property, or the creation of the debt, the debtor delivers the unindorsed note of a third person, the law presumes that it is delivered and received in absolute payment. We have failed to find any case in our state in which this question has been adjudicated. The cases cited do not touch the question. In the case in 41 Miss., 722, the agent bought the property by giving his own draft upon his principal. The court very properly held that it was no payment at all. In 43 Miss., 538, the husband had given his note for the antecedent debt of the wife. In 45 Miss., 559, the administrator gave his own note for the antecedent debt of the intestate. See Pars. on Notes and Bills, 156, 183; Whitbeck *v.* Van Ness, 11 Johns., 409. To the same effect are the following unbroken current of New York decisions: 15 Johns., 241; 1 Duer, 385; 3 Kern., 167; 1 Sandf., 9; 2 E. D. Smith, 105; 26 Barb., 192; 44 N. Y., 337; 3 E. D. Smith, 507; 3 Cow., 272. The rule is the same in Pennsylvania. 1 Watts & Serg., 94. So also in South Carolina. " If it (the note of a third person) be passed at the time of the making a purchase, or otherwise contracting a debt, there seems to be a natural presumption of an intention that it should be in discharge of the debt, and that appears to be the general effect of the adjudged cases." Gordan *v.* Price, 388; Long *v.* Spruill, 7 Jones' Law, 96; Bicknall *v.* Waterman, 5 R. I., 43; Burgess *v.* Chapin, id., 225; 15 Wise, 304; 1 Sneed, 501. Bedford cannot now recover because of *laches.* 2 Pars. on Notes and Bills, 184; 1 Green (N. J.), 251; 14 Ohio, 499; 31 Ga., 564.

*Miller & Miller*, for appellees:

When payment is made for the purchase of goods in the note of a third person, such payment is either absolute or conditional, according to the intention of the parties. In the absence of proofs, it is presumed conditional, especially where the money was agreed to be paid, and it was afterwards agreed that the note of a third person should be taken to accommodate the purchaser. In the case where it was held to be absolute payment and discharge, the taking of the note entered as an element into the contract, making it a barter of the one for the other. The money was to be paid; it was afterwards agreed to take Bobo's note. This was a sale of land— bond for title given. Legal title retained by the vendor as security, independent of the doctrine of absolute or conditional sales, as in personal property, and the presumption is that the note was taken as conditional payment only. The decree will not be disturbed unless manifestly wrong. The agreement to take the note absolutely should have been in writing. On first and second points, the following are cited: Pars. on Notes and Bills, 157, 180, 186; Benj. on Sales (2d ed.), 598 to 602; 2 Pars. on Cont. (5 ed.), 624; Whitbeck *v.* Van Ness, 11 Johns., 409; Drake *v.* Mitchell, 3 East, 251; Owenson *v.* Morse, 7 Term, 64; 27 Ala., 254; 9 Johns., 310; 2 Ired. Dig. (N. C.), 702; 3 Am. Rep., 680; 7 id., 397; 12 S. & M., 73; 9 id., 122; 41 Miss., 728; 3 Eng., 213; 48 Miss., 633; 43 id., 538. The court will not reverse the decree unless it is manifestly wrong. 48 Miss., 652; 2 Cush., 667; 48 Miss., 609; 47 id., 187.

SIMRALL, J., delivered the opinion of the court.

At the time of the purchase of the section of land by Partee from B. W. Bedford, Jr., in March, 1862, he paid $1,000 in cash and delivered to him the note of W. S. Bobo for $3,331.70, and also executed his own notes, one due at twelve months after date, the other twenty-four months after due, for $3,200 and $2,013.65, respectively. Bedford gave a bond to convey the title upon final payment being made. A suit in chancery was brought by the

personal representative of B. Bedford, deceased, and his heirs, alleging that there was due and unpaid a large balance on the notes of W. S. Bobo, and that the intestate before his death had tendered the deed and demanded payment of this balance, and claiming that the lien implied, by retaining the title, should be enforced against the land.   Partee made his answer a cross bill, and avered that the note of Bobo was accepted by the vendor as part of the cash payment, that he had paid off his two notes, and he therefore claimed that the legal title should be conveyed to him.    The controversy is thus reduced to the single inquiry, whether B. W. Bedford, the vendor, received Bobo's note as part of the cash payment, or as collateral security therefor, and since all the parties, maker and indorsers, have been pursued to insolvency, leaving about half of the debt unpaid, whether there subsists a lien on the land for the balance ?   The investigation is complicated, from the circumstance that the title bond has been lost.   What is the doctrine of the law as to the effect of taking the note of a third person by the vendor of property ? Does he thereby manifest an intention to look alone to the notes for his money, or does he mean to accept it as collateral to the liability of the purchaser ?   The great weight of authority is with the cases in our books (of Taylor & Myers v. Conner, 41 Miss., 722 ; Guion v. Doherty, 43 id., 538, and Lear v. Friedlander, 45 id., 559), that the acceptance of a note for an antecedent debt is but conditional payment and not an absolute satisfaction, if there be no agreement on the subject and no special facts which require that it should be treated as satisfaction.   But it is insisted for the appellant, that the rule is reversed where the note of a third person is accepted by the seller for property sold.    We have examined many cases which sustain that distinction ; they are :   Breed v. Cook & Cadwell, 15 Johns, 241 ; Emly v. Lye, 15 East, 12 ;   Whitbeck v. Van Ness, 11 Johns., 413 ;   Clark v. Mundal, 1 Salk., 124 ;   Bank of England v. Newman, 1 Ld. Raymond, 442. These cases hold that the taking of a bill or note for goods sold is a payment, though it would be otherwise, if taken for an

antecedent debt. In the case cited from 11 Johns., 413, the court say : " The intrinsic circumstance, that the plaintiff considered himself as taking the note at his own risk, was, that the third party made it payable to him. The defendant, by not indorsing or guaranteeing it, clearly declined pledging his own responsibility." In Breed v. Cook & Cadwell, 15 Johns., *supra*, the declaration by the purchaser, that he would not indorse the note, was accepted as authorizing the presumption that the note was taken in absolute payment. The same force is given to the non-indorsement of the note of the third person in the case cited from 12 East, *supra*. In accepting the note unindorsed by the purchaser, the seller will be considered as parting with his goods for the note, and as relying exclusively upon the credit and solvency of the parties thereto, and as waving recourse upon the buyer, if it should turn out to be unproductive. These were cases of taking the note or bill of a third person for goods sold. In the case before us, the sale was of real estate, and the security reserved by the vendor was of the nature of an equitable mortgage. How far the lien extended would be shown by the contract of the parties as expressed in the title bond — that would show what sum was acknowledged to have been paid down, and how much of the price was stated to be on a credit or unpaid. The parties were free to make contract as suited them. Bedford, the intestate, could take the note of Bobo in lieu or as part of the cash payment, or he could accept it as collateral. That was purely matter of bargain and agreement. The price agreed upon was $9,600, the sum paid in cash was $1,055.65, Bobo's note was $3,371.70, these added to the two notes of Partee make up the $9,600. C. C. Partee, who was present when the bargain was made, says that he subscribed the title bond as witness, and was present when the trade was consummated. His words are: " When Hiram Partee passed the note to Bedford, he wished Partee to indorse it, which he positively refused to do, saying, he thought he was paying too much for the land anyhow. Partee then got up and started to leave. Bedford then called him back and pro-

posed, if witness would put the indorsement of Vernon & Partee on the note he would accept it. This was agreed to by all parties. I put the indorsement upon the note and it was then accepted." It was shown that Vernon & Partee were the payees of the original note of Bobo; that note was surrendred for a renewel, which was payable to Bobo's own order and by him indorsed. This last note is the one referred to by the witness as accepted by Bedford with the indorsement of Vernon & Partee, of which firm witness was a member. This witness further says: "Nothing was said in the bond about the Bobo note. It, and about $1,000, was given him as the cash payment. By its terms, title was to be made to Hiram Partee upon payment of his notes. Don't recollect the exact amount acknowledged in the bond to have been already paid, but about $4,000."

If this testimony may be relied upon as true, it is clear that the vendor took the Bobo note, indorsed by Vernon & Partee, as part of the cash payment, and not as collateral or conditional payment of it, and that the title should be conveyed, when Partee paid his two notes. The security arising by withholding the deed only applied to the vendor's own notes. No other conclusion can be reached, except upon the rejection of this testimony as unworthy of credit. There are some intrinsic circumstances which support it. Partee did not indorse or guarantee Bobo's note. At the time it was taken by Bedford, Bobo was reported to be a man of wealth, and was a large property holder, when application was made by the father of B. W. Bedford, the vendor, to Partee for payment; he preferred no claim on account of the Bobo note. Nor did Partee promise to pay or admit a responsibility for the part of the consideration represented by Bobo's note. By arrangement the two notes were left with the president of the De Soto Bank at Memphis to receive payment. The first note was paid at the time appointed. But Partee claimed, as reported by Mr. Elder, the bank president, to Mr. Bedford, Sr., that a deed should be left with Mr. Elder for him when he paid the last note; subsequently, however, Partee paid the note. In the inter-

view with Partee, B. W. Bedford, Sr., although he had the Bobo note in his possession for collection, made no claim or demand for its payment on Partee. We have not had the benefit of an oral argument on behalf of the appellee, and are not advised of the reasons upon which the chancellor rested his decree. As this decree will be reversed upon what we conceive to be an erroneous conclusion of the chancellor on the facts, it may be proper to remark that language has been used in some of the cases, which may give countenance to the idea that such decision is like the verdict of a jury, conclusive. We do not think that the court meant to commit itself to a doctrine as broad as that. In Davis v. Richardson & May, 45 Miss., 510, it is said in effect, that the party complaining of the decree "must show that it was clearly wrong. The burden is upon him to prove that it was founded upon insufficient testimony." In Apple v. Ganong, 47 Miss., 196, it was said that the decision of the chancery court on controverted facts was analagous to the verdict of a jury, and must be shown to be erroneous by being opposed to the weight or preponderance of the testimony. Perhaps stronger words may have been used in some of the earlier cases, but we do not think more was meant than that the decision of the chancellor was presumptively right, and that it would stand unless opposed by the weight of the evidence. In our system, the jury is the exclusive triers of fact, and in the discharge of that function is independent of the judge, except that the judge has a conditional power over the verdict, and may set it aside and award another trial. The chancellor passes upon the facts as well as the law. An appeal, or a writ of error, brings the final decree up for review both upon the law and fact. The presumption in favor of the decree reaches to both aspects of it. If it be alleged that there is error in finding the facts, the aggrieved party must show that the decision is against the weight and preponderance of evidence, or without sufficient competent evidence. If that can be established, error is shown. We do not think the utterances of the court in the sev-

eral cases there referred to, and the anterior ones, were intended to mean more than this.

Decree reversed, and cause remanded for further proceedings.