Caldwell v. Hall.

In any aspect of the case, substantial justice has been done and the judgment is affirmed.

## CALDWELL v. HALL.

1. MORTGAGE: *Reimbursed advances to protect mortgaged property.*

   One who has a lien on a growing crop may advance what is fairly necessary to prevent the waste or destruction of the security, and retain such advances out of the proceeds of sale before crediting any portion of his debt.

2. SAME: *Application of payment.*

   A mortgagee cannot apply the proceeds of his mortgage security to any other than the mortgage debt without the consent of the mortgagor.

3. NOTES AND BILLS: *Presumption: proof of payment.*

   A promissory note outstanding in the possession of an indorsee imports *prima facie* a present subsisting debt, and proof of its payment rests upon the maker.

4. SAME: *Same. Acceptance of note of third party.*

   The acceptance by a creditor of the note of a third person for a pre-existing debt evidenced by note, is, in the absence of proof that it was in discharge of the debt, presumed to be as collateral security merely, and does not affect the liability of the parties to the old note, or any security for it.

5. MORTGAGEE: *Application of rents.*

   A mortgagee in possession is liable for all rents collected or that could be collected by ordinary diligence, and must apply them in discharge of the mortgage debt unless the mortgagor assents to a different appropriation.

APPEAL from *Lee* Circuit Court in Chancery.

M. T. SANDERS, Circuit Judge.

*Sanders & Husbands* for appellants.

The finding of the Chancellor that the $500 note was paid by appellee, is clearly contrary to the evidence. This court

Caldwell v. Hall.

will review the findings of facts by the court, and. if clearly against evidence will reverse. *Nolen v. Hardin, 43 Ark., 318.*

When the maker of a note is found in possession of it, the presumption is that the note is paid. The counter presumption is equally strong, that as long as the holder of the note retains possession of it, the presumption is that the note is not paid. *65 Ga., 221.* Not only this, but there is another presumption in favor of appellant, and a very strong one; that when the holder of a note receives from the maker another note, either on himself or other parties, for the payment of the original note, the presumption is, that such note or notes are so received as collateral or additional security and not as absolute payment or satisfaction of the original note.

These presumptions can only be overcome by strong evidence of a contrary intention, and there is none in this case. See *84 Ill., 183; 58 Ind., 221; 85 Penn., 244; 53 Ind., 279; 68 Ga., 281; 56 id., 214; 51 Miss., 84; 5 Neb., 433; 51 Miss., 631; 50 Cal., 162; 14 Kans., 164; 66 Ill., 351; 28 Ark., 166; 27 id., 374; 29 id., 496.*

*H. N. Hutton* for appellee.

COCKRILL, C. J. This is an appeal from a decree canceling a mortgage, and enjoining the trustee named in the instrument from executing a power conferred upon him by its terms to sell the mortgaged premises for the purpose of paying off the mortgage debt. The suit was brought by the mortgagor against the trustee and beneficiaries under the mortgage. The court found, in substance, that the mortgage debt had been paid and decreed accordingly.

The proof upon which the case was heard was not full nor satisfactory on either side. The mortgage is not made a part of the record and some obvious facts that would render the solution of the questions presented easier are only vaguely

hinted at in the testimony. The case is brought here, however, for determination, and upon the whole we are able to gather about this state of facts from the conflicting data that are given:

Mrs. Hall, the appellee, was the owner of a tract of land in Lee county, which she desired to cultivate in 1880. To enable her to procure supplies on a credit to make a crop she executed the mortgage in question upon the land and the crop to be raised thereon in that year, in favor of a merchant named Brooks, to secure her note for $500, payable to the merchant's order in the following autumn, and delivered the note and mortgage to him as security for the payment of the supply account she was to contract. An account was thereafter opened upon the merchant's books with Mrs. Hall and her son jointly. No explanation is given of the son's connection with the transaction. It is not contended, however, that Mrs. Hall's indebtedness was less than the face of the note, and further than that we need not inquire. The lands produced a poor crop and the merchant's account exceeded the amount of the mortgage security. Only a partial payment was made on the debt. The proof is conflicting as to the amount of this payment. On the part of Mrs. Hall it is said that eight heavy bales of cotton worth $250 were delivered to the mortgagor to be credited on the mortgage debt, but the only witness who testified to the fact does not profess to have delivered the cotton himself or to have been present when it was delivered. On the other hand, the merchant testifies that only seven bales were delivered to him and that the gross receipts therefor were $227.35. He is positive in his statement as to the number of bales received, and is aided in arriving at his conclusion as to the amount the cotton realized, by his contemporaneous book entries showing the date of the receipt of each bale, its weight and the price per pound realized. These facts render his statements as to the amount and value of the cotton received more

trustworthy than the statements in round numbers made by the appellee's witness. But the merchant further testifies that he paid for picking and getting the cotton into market the sum of $147.75; that the net proceeds of the sale amounted to only $79.60, and that this was the amount for which credit was given. The correctness of these figures was not denied and the statement is therefore taken as true.

It is a well-settled principle in equity that one who has a lien on a growing crop may advance what is fairly necessary to prevent the waste or destruction of the security, and may retain the advances thus made out of the proceeds of sale before crediting any portion of his debt. *Hughes v. Johnson, 38 Ark., 296; Fry v. Ford, id., 255.* This appears to be what the merchant did in this instance.

1. MORTGAGE: Reimbursed advances to protect mortgaged property.

There can be no question where the application of this payment of $79.60 should be made. The fund arose from a sale by the mortgagee, or from the appropriation of the value of a part of the mortgage security; and, without the consent of the mortgagor, the creditor could not divert it from the partial extinguishment of the mortgage debt. *Turner v. Greer, 47 Ark., 17.* The nearest approximation we can make to the date of this payment is January 1, 1881, and the sum of $79.60 should have been credited on the mortgage as of that date. Shortly after this time Mrs. Hall rented out her lands for the year 1881 for the sum of $400. The total indebtedness to the merchant for supplies at this time amounted to $1400. Mrs. H. offered the rent notes retained by her to the merchant as collateral security for what she owed him. At his suggestion these notes were surrendered by Mrs. Hall to the tenants who had executed them, and a new note for the total amount of the rent was taken, payable directly to the merchant, with a view of having the tenants attorn to him. He afterwards caused one of the tenants to execute a mortgage in his favor upon the crop to be raised upon the land and upon his farming implements and

2. SAME: Application of payment.

stock for the purpose of securing the payment of the note and also an account for supplies which the merchant agreed to furnish the tenant.

An irreconcilable conflict arises at this point in the testimony. Mrs. Hall's agent, who conducted this note transaction with her merchant, swears that the merchant accepted the note in discharge of the balance due upon the mortgage debt, and agreed to credit the excess over that debt upon the unsecured account. The merchant with equal positiveness denied that there was such an agreement, and claimed that the understanding was that the note was to be held by him as security for the unsecured portion of his account. No other witness to the transaction was produced.

No demand, however, appears to have been made upon the merchant for the cancellation or satisfaction of the mortgage, and the note which it secured was permitted to remain uncanceled in his hands, and some time in the year 1881, long after it became due, it was assigned along with the rent note to appellants, J. W. Caldwell & Co. About this time the merchant failed in business, and no longer had a legal interest in the matters in controversy. As Caldwell & Co. took the note after dishonor, they held it of course subject to whatever **3. NOTES AND** infirmities existed in it in the hands of the merchant. The **BILLS:** note itself, however, outstanding in the possession of the in- **Presumption:** **Proof of pay-** dorsees, imported *prima facie* a present subsisting debt, and **ment.** the burden was upon Mrs. Hall to establish the fact of its payment. *Story Prom. Notes, sec. 106; Grant v. School Town, etc., 71 Ind., 58.* Has she done so?

**4. SAME:** It is an established rule of law that the acceptance by a **Same: Ac-** **ceptance of** creditor of the note of a third person for a pre-existing debt **note of third** **party.** evidenced by note, will not discharge the original cause of action unless it is, by agreement of parties, taken in payment of the prior debt. *Akin v. Peters, 45 Ark., 313; DeGampert v. Brown, 28 id., 166; Blunt v. Williams, 27 id., 374; Partee v.*

*Bedford, 51 Miss., 84; Brown v. Olmsted, 50 Cal., 162; Wilhelm v. Schmidt, 84 Ill., 183; Young v. Hibbs 5 Neb., 433.*

In the absence of proof that the second note is taken in payment of the first, it is presumed to be held as collateral security merely, and does not affect the liability of the parties to, or the security of, the old note. *Authorities supra.*

The evidence as to the agreement to accept the second note in discharge of the first, in this case, is equally balanced upon the two sides, and the legal presumption referred to must be allowed to prevail. The proof, therefore, fails to establish the fact of payment. But the evidence of the witness, Isham Thomas, who was the tenant upon the mortgaged premises in 1881, shows that a part of his crop and other personal property was devoted to the payment of the mortgage debt which he had contracted with Mrs. Hall's creditor, Brooks. What, if anything, was the amount of the supply account due Brooks which the mortgage from this witness secured, or what the value of the property taken under the mortgage to satisfy the debt, the evidence does not disclose, and there is nothing upon this branch of the case upon which we can base a decree. It is apparent, however, that in any event the decree appealed from is erroneous, for if the entire amount due upon the $400 note had been collected and applied to the discharge of the mortgage indebtedness, something would still be due upon that score. Whatever was collected, or could have been collected by the use of ordinary diligence, upon this indebtedness, must go to the discharge of Mrs. Hall's mortgage, for the legal effect of the arrangement made between the mortgagor and mortgagee at the time the rent note was executed to the latter, was to place him in possession of the mortgaged premises with power to collect the rents.

A mortgagee in possession must devote the rents to the discharge of the mortgage debt, unless the debtor assents to a different appropriation. No such assent is satisfactorily shown

5. MORTGAGEE.

Application of rents.

by the appellants.   It does not follow, however, that the mortgagee was bound to devote everything that the proof indicates that he collected from Isham Thomas to the discharge of Mrs. Hall's indebtedness.   She undertook to subrogate him to her rights as landlord, that is, to her lien upon the crop for the security of the rent.   But he saw fit to take a mortgage from the tenant to secure the rent and also a further sum which it was anticipated the tenant would owe him.   The mortgage covered everything to which the landlord's lien would extend and other property besides.   But the merchant could not use the vantage ground that Mrs. Hall had given him to prejudice her by applying the mortgaged property to which the landlord's lien extended to the satisfaction of another debt.   Mrs. Hall, however, had no interest in or lien on the stock or farming implements, and had not put her creditor in the way of acquiring an interest in them.   The creditor may then apply the proceeds arising from a sale thereof to the satisfaction of the account due from the tenant, in preference to the rent note, without doing violence to any right or equity of Mrs. Hall.

The decree must be reversed and the cause remanded with instructions to ascertain the amount that should be credited on the rent note executed by Mrs. Hall's tenants to her mortgagee, and to credit this amount, together with the sum of $79.60, upon her mortgage indebtedness, and to permit the appellants to enforce the mortgage for the residue.