No. 25,808.

THE EXCHANGE STATE BANK OF KIRWIN (substituted for THE KIRWIN STATE BANK OF KIRWIN), *Appellee*, v. THE FARMERS STATE BANK OF KIRWIN, *Appellant*.

### SYLLABUS BY THE COURT.

CHATTEL MORTGAGES—*Control of Property by Mortgagee—Liability for Expenses Incurred*. Where a senior mortgagee of a wheat crop takes possession of it at harvest time under authority of his chattel mortgage, and harvests, threshes, and hauls the crop to market and sells it, he is entitled to reimbursement out of the proceeds of the sale for his actual and reasonable expenses pertaining thereto, and his claim therefor takes precedence over the rights of a junior mortgagee; and where the senior mortgagee is ready to account to the latter for the balance of the proceeds of the sale of the wheat, after satisfying his senior mortgage claim and his actual, necessary and reasonable expenses of harvesting, threshing and hauling the crop to market, he is not liable to the junior mortgagee as for conversion of the wheat crop or of its proceeds.

Appeal from Phillips district court; WILLARD SIMMONS, judge. Opinion filed July 11, 1925. Reversed.

*W. N. Moore* and *William McKinley Moore*, both of Phillipsburg, for the appellant.

*W. A. Barron* and *William Kingery*, both of Phillipsburg, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for the conversion of a crop of wheat in which plaintiff and defendant were interested as mortgagees.

Early in 1921 one Hugo Boe was the owner of a wheat crop growing on seventy-seven acres of Phillips county land and was also the owner of a one-third interest in a wheat crop growing on sixty acres on an adjoining tract of land. Boe gave three successive chattel mortgages on this wheat crop, viz.:

First, lien to Gray & Stagg for ................................... $100.00
Second, lien to defendant for...................................... 548.06
Third, lien for $366 (reduced by payments) to plaintiff for.......... 300.50

At harvest time the defendant took charge of the crop, with the debtor's consent, and cut, threshed and marketed the crop, and paid

See 5 R. C. L. p. 471.

Exchange State Bank v. Kirwin State Bank.

all expenses incidental thereto, paid off the first lien of Gray &
Stagg, then appropriated to itself the amount due under its second
mortgage, paid plaintiff's predecessor, the Kirwin State Bank, $41.79
on account of the third mortgage, and held a balance in hand of
$34.03, which it tendered to plaintiff, and to avoid controversy it
offered to pay $45 to plaintiff.   Defendant accounted as follows:

| | | |
|---|---:|---:|
| Total receipts of sale of wheat.................................... | | $1,269.46 |
| Cost of cutting, threshing and hauling the wheat to market, $463.64 | | |
| First lien of Gray & Stagg satisfied by defendant........... | 100.00 | |
| Applied to payment of defendant's second mortgage and interest ................................................ | 630.00 | |
| Paid to Kirwin State Bank (plaintiff's predecessor)......... | 41.79 | |
| Total disbursements ................................. | | 1,235.43 |
| Balance held for plaintiff.................................... | | $34.03 |
| Tendered to plaintiff........................................ | | 45.00 |

The pleadings developed the foregoing facts, and by demurrer the
plaintiff raised the legal question whether in taking possession of the
mortgaged property defendant was warranted in incurring expenses
as a prior charge over plaintiff's mortgage for harvesting, threshing
and marketing the crop.

Plaintiff's demurrer was sustained; and defendant appeals, di-
recting attention to the statute (R. S. 58-307) which provides that
in the absence of stipulations to the contrary a mortgagee of chat-
tels has the right of possession thereto.   By express stipulation in
this chattel mortgage contract it was provided:

"If at any time the payee of said note [defendant] shall deem the said
debt unsafe or insecure they are hereby authorized to enter upon the premises
where the said property may be and remove and sell the same at public or
private sale, with or without notice, and out of the proceeds retain the amount
then owing on said debt, *with expenses attending the same,* rendering to the
undersigned the surplus, after the whole of said debt shall have been paid,
with charges aforesaid."

Appellant also directs attention to certain general principles of
equity to the effect that money advanced by a mortgagee to avoid
waste or destruction of mortgaged crops is chargeable against the
mortgagor in an equitable accounting, citing *Caldwell v. Hall,* 49
Ark. 508; 4 A. S. R. 64; 11 C. J. 562; 5 R. C. L. 471; and that a
chattel mortgagee in possession is entitled, upon an accounting, to
be credited with his actual and reasonable expenses in caring for
the chattel, citing *Zadek et al. v. Burnett et al.,* 176 Ala. 80, 11 C. J.
552.   With this general doctrine there need be no quarrel, since it
is apparently just in so far as it deals with the rights and liabilities

of mortgagee and mortgagor. Our present concern is with its applicability to govern the rights of third parties, like those of junior mortgagees.

Appellee concedes that certain expenses are properly chargeable against the proceeds of a chattel-mortgage sale of a growing wheat crop; for example, the services of a constable or sheriff in selling the wheat crop. Similar legitimate expenses might be suggested, as the plowing of fireguards, and repairs of fences to protect the mortgaged wheat field from damage by cattle.

It cannot be denied that defendant was under no duty to harvest, thresh and haul this wheat to market. That was the duty of Hugo Boe, the owner and mortgagor. If Hugo Boe had done that work himself he could not have charged such expenses against the gross proceeds, and compelled his creditors, the first, second and third mortgagees, to content themselves with the net remainder after deducting these expenses.

But since the debtor did not and apparently would not discharge his duty as a diligent husbandman and an honest debtor, was the defendant compelled to follow the strictly literal terms of its chattel mortgage in disposing of the wheat crop, by mere notice of sale, as if it were a set of farm implements, the equipment of a pool room, the stock in trade of a blacksmith, or any of the more common sorts of personal property covered by chattel mortgages? A majority of this court are persuasively impressed with the fact that defendant dealt with this wheat crop not only in the best practicable way, but really in the only practical way to dispose of it in the interest of all concerned. If the wheat crop had been offered for sale as it stood in the field, the possible number of prospective bidders would have been very few. Not many people who have the equipment to harvest a wheat crop have the time to do it. They have their own wheat crops to harvest, and the time for such work is limited. Indeed, the court can hardly refuse to recognize that in the crowded harvest season no prospective bidder could be interested in a chattel-mortgage sale of a standing wheat crop unless he could buy it so cheap as to promise him a very substantial profit. And thus it appears that the defendant did the natural and practical thing to turn the mortgaged chattel into money. Somebody had to turn the wheat crop into money before anybody could be paid, and so the reasonable charges incident to turning this peculiar chattel into money, by harvesting, threshing and marketing it, were proper expenses inci-

dent to the foreclosure and sale of the property to satisfy defendant's claim as a senior mortgagee. This view is supported by the case of *Caldwell v. Hall,* 49 Ark. 508, 4 A. S. R. 64, where it was held that a mortgagee of a growing cotton crop was entitled to reimbursement of $147.75 expended by him for picking and getting the cotton to market, under the general principle in equity that one who has a lien on a growing crop may advance what is fairly necessary to prevent waste or destruction of the security, and may retain the advances thus made out of the proceeds of the sale before crediting any portion of his debt.

In *Cox v. Beck et al.,* 83 Fed. 269, it was held that a mortgage lien on sheep and their wool was subject to the necessary expense of shearing, storing and marketing the wool.

In *Carroll v. James,* 162 N. C. 510, it was held that a mortgagee who took charge of a quantity of leaf tobacco was entitled to be credited with the reasonable cost of grading and marketing the tobacco, as well as for incidental warehouse charges and rent. In the case just cited it appears that some of these expenses were within the terms of an agreement between the parties, but the language of the opinion is fairly susceptible of a construction that such expenses would have been allowable if there had been no agreement. (See, also, *Croze v. St. Mary's Canal, etc., Co.,* 143 Mich. 514; id., 153 Mich. 363.)

Appellee relies on *Bank v. Equity Exchange,* 113 Kan. 696, 216 Pac. 278, where it was held that the defendant elevator exchange which bought from the mortgagor the grain produced from a mortgaged wheat crop was not entitled to withhold from the mortgagee part of the value or price of the wheat because such value included the necessary charges for threshing and hauling the wheat to market. But in that case the controversy concerned chiefly the relative rights of a mortgagee and a defendant who had purchased the mortgaged property from a mortgagor. Here the case is between senior and junior mortgagees, and the question is whether the costs of harvesting, threshing and marketing the wheat were properly chargeable as costs in the foreclosure sale of the property. The court holds that such costs were proper and consequently that defendant was not liable to plaintiff as for conversion.

Reversed with instructions to enter judgment for defendant.

Burch, J., dissenting.

State, *ex rel.*, v. Mowry.

DAWSON, J. (dissenting): The foregoing conclusion would be quite satisfactory to me if it could be so held by liberal interpretation and sanction of some statute, or if it could be fairly implied from the contractual rights and liabilities involved in the senior and junior chattel mortgages. But I cannot agree that the trial court erred because it did not invent, without statute or Kansas precedent, a rule which seems so practical now that it has been discovered and announced. Cases from other jurisdictions on a question of this sort are of no significance, since the rights of mortgagors and mortgagees of chattels in Kansas are distinctive and peculiar and not in accord with the law in other jurisdictions. (Notes in 4 A. S. R. 69 *et seq.*, and 96 A. S. R. 682 *et seq.*) I think the trial court was fully justified in applying the doctrine of *Bank v. Equity Exchange*, supra, to the present case, for whatever differences as to details may exist, the cases in principle are as much alike as two peas. See, also, 11 C. J. 562 *et seq.*; id., 620 *et seq.*

I therefore dissent.