## COLE et al. v. STANDARD LIFE INS. CO.

(Division B. April 30, 1934. Suggestion of Error Overruled June 11, 1934.)

[154 So. 353. No. 31223.]

C. C. Brown and McDonald & McDonald, all of Memphis, Tennessee, and D. W. Houston, Sr. and Jr., of Aberdeen, for appellants.

332

**Stovall & Stovall,** of Okolona, and **Niles Moseley,** of Jackson, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The principal issue in this case, and to which all other issues are subsidiary, is whether the death of the in-sured, Kate Kingsley Cole, was by suicide or was accidental. Her death occurred in Okolona, Mississippi, her old home, on Saturday evening, April 16, 1932, at the end of a week's visit. About 7 o'clock P. M., she went in-to the kitchen of the home in which she had been sojourning that week and remarked that she must go to her room and finish her packing, by placing in her baggage her pistol which she had not yet placed therein. Shortly thereafter a pistol shot was heard in her room, which she occupied alone, followed by the thud of a heavy fall, and when the other occupants of the residence hastened to her room, they found her prostrate upon the floor on her back, with her left hand on her breast, and her right hand extended from her body with her pistol within three or four inches of her right hand, the handle thereof towards her hand. She died immediately. It was found that a bullet had entered her right temple just above the ear, and had made its exit at a point just under the left ear about an inch below the point of entrance. There was a circular powder burn at the point of entrance of the bullet about one inch in diameter. One cartridge of the pistol had been freshly fired.

There was no possibility that the shot was fired by any third person; there is no suggestion that such was the case. It was the contention of the insurance company that the physical facts lead to the inescapable conclusion that the death was by suicide, while the executor contended that, when taken in connection with the presumption against self-destruction, the facts would justify the conclusion of accidental death. In Mrs. Cole's room there was an old-fashioned wardrobe estimated at six feet, four inches high; the top shelf in this wardrobe was about six feet above the floor. It was known that she kept her pistol on the top shelf of this wardrobe; Mrs. Cole was five feet seven inches tall. There was a base to this wardrobe about one foot five inches high, and this base projected out in front of the doors about ten or twelve inches. The west door of the wardrobe was open when Mrs. Cole was found, and her body was lying parallel with, near to, and in front of, this wardrobe. The pistol was a small weapon of the old-fashioned revolver type with hammer and trigger.

It is the theory of the executor that when Mrs. Cole attempted to get the pistol from the top shelf of the wardrobe, and not being of sufficient height to reach the shelf, she stepped on the ledge formed by the base of the wardrobe, and having grasped the weapon she accidentally lost her balance and slipped from the base, and in her attempt to save herself from a dangerous fall she either struck the hammer of the pistol against the wardrobe, or else convulsively and involuntarily pressed upon the trigger, causing the weapon to fire.

Without undertaking to follow out the chain of inference upon inference necessary to be pursued to arrive at the conclusion of accidental death, we think it will be obvious, without any elaboration of discussion, that the physical facts present, to say the least, a serious ques-

tion whether the ultimate inference of accidental death may be said to be of any other character than a mere possibility, as to which it was held in Knights of Honor v. Fletcher, 78 Miss. 377, 389, 28 So. 872, 29 So. 523, that a mere possibility, although, plausible, is not sufficient, even with the aid of the presumption against suicide.

But on the trial the preponderance of the testimony then before the court, and which seemed then to be by far the more credible, showed that Mrs. Cole was fairly well situated in life, was well pleased with her employment, had seemed generally cheerful and happy all the week of her visit to Okolona, and had been busy with plans for the future, none of which plans would suggest the thought of suicide; and the chancellor held that these circumstances and the strong presumption raised by them against suicide were sufficient to justify the conclusion of accidental death, and at the January, 1933, term of his court he so held and entered a decree against the insurer.

About three weeks after the case was tried, and after adjournment of the term, Mr. C. A. Lyles, of Okolona, the agent of the insurance company at that place, and who is intimately known by his friends by the name of Adlai, received the following anonymous letter:

"Okolona, Miss., Feb. 9, 1933.

"Dear Adlai:

"Here is a letter I got out of the Postoffice the day after Kate died. My conscience wont let me keep it or destroy it. Just hope it isn't too late. For fear of trouble my name isn't signed."

Inclosed therewith was the letter referred to, a short note reading as follows, the name of the person to whom addressed having been cut therefrom by scissors:

"Dear

"You and only one other will ever know. I am depending on you for that. I can't go on. Nothing but worry, worry, worry. My love to you.

"Kate Cole."

These letters were, of course, promptly delivered to the insurance company by the agent, and an investigation was at once made into the new developments thus introduced. It was concluded that the anonymous letter was written by a Mrs. D. who had long been an intimate associate with Mrs. Cole, and especially during the week of her visit to Okolona, and who was with Mrs. Cole much of the day of her death. This Mrs. D. had been an important witness for the executor on the trial, and she was one of the main witnesses by whom proof was made of Mrs. Cole's happy frame of mind, so far as generally observed. For this reason the two letters were submitted to two experts on handwriting and upon questioned documents, together with authentic samples of the writings of Mrs. D. and of Mrs. Cole, and upon examination these experts declared the "Dear Adlai" letter to be in the handwriting of Mrs. D. and the note signed by Kate Cole to be in the genuine handwriting of Mrs. Cole.

After full investigation the insurance company, on April 10, 1933, filed a petition to be allowed to file a bill of review for newly discovered evidence, the petition setting forth the new facts, supported by affidavits and in all respects complying with the requirements of the practice in such cases as outlined in Griffith's Mississippi Chancery Practice, sections 636-641. The petition particularly complied with the requirement that such a petition "must show clearly and distinctly that the newly discovered evidence is relevant and material, and that it is of such character and weight that if known and produced at the original hearing it would probably have produced a different result either when considered alone or when taken in connection with the evidence already of record," and that "it must be definitely and positively shown that the newly discovered matter was not available

at the original hearing and that it was through no fault of the petitioner that it was not available.''

Upon the hearing of the petition and affidavits in support thereof, after notice to the opposite parties, and hearing their affidavits, the chancellor decided, correctly as we think, to allow the bill of review to be filed, which was accordingly at once done. Answer was promptly made, and at the July, 1933, term, the case was fully heard on the original record and on additional testimony under the bill of review, at the conclusion of which the chancellor set aside his former decree and entered a final decree in favor of the insurer.

Whether the chancellor was correct in his decision on the first hearing, we are not here called on to say, further than this: The facts developed on the first hearing were stronger in favor of the theory of suicide than were those in Jefferson Standard Life Ins. Co. v. Jefcoats, 164 Miss. 659, 143 So. 842, in which case the court said, in effect, that if the jury had returned a verdict of suicide it would have been upheld. So, in this case, if the chancellor had, in the first trial, rendered his decree in favor of the insurer, it would have been affirmed; for the function of drawing inferences from established facts is one which, under the Constitution, belongs to the chancellor, Huckaby v. Jenkins, 153 Miss. 359, 361, 121 So. 130; and we are as much bound by his decision in that respect as in any other upon the facts—we must accept his findings unless manifestly wrong. The inquiry is thus brought down to the question whether the proof sustains the bill of review sufficiently that thereby the original decree may be opened and the former record reviewed de novo in conjunction with the evidence newly discovered.

It is contended by the executor that neither of the letters above quoted are genuine. Mrs. D. denied vehemently, both when interviewed and later when a witness under

the bill of review, that she had written the "Dear Adlai" letter or that she had ever seen or heard of the so-called suicide note, and appellants produced a number of witnesses, whose acquaintance with the parties and whose experience in matters of handwriting were such as to give high probative value to their testimony, who all said that neither of the two writings are genuine. And the insurance company produced a number of witnesses of similar acquaintance and experience, in addition to a professional expert on questioned documents, who declared both the writings to be genuine. The two questioned letters, together with many other writings admitted to be genuine, have been sent here and have been examined by all the judges participating in this decision, and we are all of the opinion that there is no great doubt that the two questioned letters are in fact genuine; but if we were less able to satisfactorily determine that matter, we would nevertheless have to accept the decision of the chancellor on the issue which he has determined upon disputed evidence, disputed as above stated. We might mention, in this connection, that perhaps the greatest stress among all the points made by the executor was upon the fact that practically all Mrs. Cole's writings showed a confirmed habit on her part to use frequent underscorings, while in the so-called suicide note not a word was underscored. This argument is displaced by the fact that a two-page letter, admittedly written by Mrs. Cole to her sister on the afternoon of the day of Mrs. Cole's death, similarly shows not a word underscored, and this last letter discloses peculiarities which so strikingly conform to those in the suicide note that the conclusion would seem difficult to avoid that the same hand wrote both. And just here a significant circumstance may be mentioned, namely, that this letter to Mrs. Cole's sister, written the afternoon of Mrs. Cole's death;

was found, as the sister testifies, in Mrs. Cole's purse, which purse was delivered to the sister by Mrs. D., who had obtained the purse immediately after Mrs. Cole's death, and it was from the possession of Mrs. D. that the so-called suicide note was afterwards received.

The executor contends, further, that admitting that both these letters were written as claimed, the "Dear Adlai" letter proves nothing as to when the so-called suicide note was written, or even as to when it was received, and that the terms of the latter do not show that it had any reference to an intention towards self-destruction. The "Dear Adlai" letter proves nothing directly except that the writer had the suicide note in her possession and that she delivered it by mail to the agent of the insurance company. And if a suicidal intent must be proved beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis, and by the suicide note alone, then perhaps the so-called suicide note would prove nothing. But all this is to be taken in connection with the other facts. It is shown by other evidence that upon several occasions Mrs. Cole had used expressions, both orally and in writing, which are fairly subject to the inference that sometimes she had considered death as not unwelcome to her, that on occasions the thought of suicide had appealed to her, although generally demeaning and expressing herself in a manner that but few would ever suspect the fact mentioned. And these expressions, arising to the height of happy expectations and falling to the depths of melancholy, would occur on some occasions, so it seems, in the same conversation or in the same letter.

As an instance of what we have just mentioned, there is a letter before us written by Mrs. Cole, about three weeks before her death, from Minden, Louisiana—where she had been employed for about thirteen months as a saleswoman—to an intimate friend in Alabama, in which

she speaks in some sentences of her satisfactory employment at Minden and of her interest in her work there, 'and then in other sentences in the same letter of her loneliness there, saying that she gets ''so hungry to see someone I know, I feel as if I can't stand to stay here,'' and in another place in the same letter she says, ''If I had another job would fly to it.'' In this letter after writing in terms manifesting the keenest interest in worldly affairs in general and her friends in particular, she sinks at other places into such expressions as these: ''You can never know what an empty life mine is. Some days feel as if I can't go on. What have I to make the effort for? Yet we are here and have to stay until God sees fit to call. . . . If I am sick again please let me go. . . . I am not at all interested in myself.'' From the heights to the depths, all in the same letter. And note the expression in the suicide note, ''I cant go on,'' and the same expression in the Alabama letter: ''Some days I feel as if I cant go on; yet we are here and have to stay until God sees fit to call.''

This is simply an illustration of the character of the evidence the chancellor had before him. The record is voluminous, and we cannot, within the reasonable limits of a written opinion, enter upon further details. The evidence in behalf of the insurance company under the bill of review was vigorously disputed at every angle; but it was the privilege and duty of the chancellor to act according to what was the more convincing to him in point of fact and inferences of fact. It seems to us that there was sufficient in the evidence and in all the surrounding circumstances to support the conclusion of the chancellor that the note in question signed by Kate Cole was a suicide note, and that, of course, is conclusive upon us, so far as the facts are concerned.

The presumption of fact, so called, against the suicide

of a sane person, is always an evidentiary element in the trial of civil cases, but it is strong or weak according to the relevant proof bearing upon that issue. The physical facts here point so convincingly towards suicide that obviously only the strongest, the very strongest, presumption against it would save the case from that conclusion. The testimony under the bill of review weakened or impaired the presumption to such an extent that it was no longer of sufficient strength, as against the physical facts, to support the conclusion of accidental death; hence the newly discovered evidence was such as to justify and to sustain the bill of review, and the original decree being thereupon opened, the present decree on the whole case is correct and must be affirmed.

Affirmed.