MAGNOLIA TEXTILES, INC. et al. *v.* GILLIS, et al.

In Banc. June 13, 1949.

(41 So. (2d) 6)

Price, Phillips& Alford, George E. Shaw Robert E. Perry, L. Arnold Pyle, and Cameron & Wills, for appellants.

Henley, Jones & Woodliff, for appellees.

802

803

804

**Smith, J.**

Appellees filed their original bill in the Chancery Court of Pike County against appellants, Magnolia Textiles, Inc., and J. H. Price, Trustee, averring "That the defendant, Magnolia Textiles, Inc. has asserted a claim and pretends to have a right with respect to the title of the above described land, to-wit: the right to prohibit the use thereof for the purpose of operating a clothing manufacturing plant thereon, which claim and pretension may cast a doubt or suspicion on the title of the complainants, the real owners of said property, with the right to use the same for such purposes, and that Section 1324 of Mississippi Code of 1942 authorizes the complainants to maintain a suit in a court of equity for the purpose of having said cloud, doubt or suspicion cancelled and their title forever decreed to be free and clear therefrom."

J. H. Price, Trustee, was made a party because of a deed of trust on the property involved, in favor of Magnolia Textiles, Inc., "in order that he might protect any interest which he may claim in said property by virtue of the provisions of said deed of trust, or which may be claimed by Magnolia Textiles, Inc. by virtue thereof."

The property involved in the suit is an old cotton mill building in McComb, which was acquired by R. D. Sanders, President of Magnolia Textiles, Inc., on August 15, 1941, and conveyed by him on August 18, 1941, to Magnolia Textiles, Inc., which on June 2, 1942, conveyed it to R. H. Jones. Three days later he conveyed a seven-eighths undivided interest in said property to N. B. Gillis, Kate Gillis, Edna H. Jones, W. G. McLain, Doris Cleo McLain, W. S. Johnson and Sallie Smith Johnson. On October 4, 1943, W. G McLain and Doris Cleo McLain conveyed their interest therein to their co-tenants, supra. The conveyees in that deed are the appellees in this case.

The suit revolved around a restrictive covenant and its meaning, in the deed from Magnolia Textiles, Inc., to R. H. Jones aforesaid, which reads as follows: "As a part of the consideration herein, it is agreed and covenanted that the said R. H. Jones and assigns shall not directly or indirectly use said property for any type of textile industry and shall not directly or indirectly operate in or on said property any type of textile industry for a period of ten (10) years from date hereof without first securing the written consent of the said Magnolia Textiles, Inc., or assigns. All of the same being a covenant which will run with the land, and violation of this agreement and covenant shall thereby subject the violator to all penalties of injunction, damages and other appropriate, legal and equitable remedies, and such violation shall thereby create a prima facie right to said remedies."

Magnolia Textiles, Inc., in June 1942 was engaged in "carding, spinning, weaving, and finishing cotton piece goods."

The contention of appellants is that this covenant prohibits the operation of cotton mills or weaving factories, and also needle manufacturing plants, and garment making of all types in or on the property. The appellees concede it prohibits the use of the building for cotton or weaving mills, but deny it bars needle plants, or garment making, therefrom.

Appellants insist that the purpose in insisting upon this covenant was to protect the labor of Magnolia Textiles, Inc., at Magnolia, a few miles from McComb, whence about one-third of its labor is obtained, and the labor of various other Sanders Industries, both weaving and needle, in the area. On the other hand, appellees argue that the purpose was to create a monopoly of labor and to thwart competition. That question, in our judgment, is incidental, however, to the real issue in this suit, which is the meaning of the phrase "That said R. H. Jones and assigns shall not directly or indirectly use said property

for any type of textile industry, and shall not directly or indirectly operate in or on said property any type of textile industry for a period of ten years from date hereof without first securing the written consent of the said Magnolia Textiles, Inc., or assigns.''

The prayer of the bill of complaint asked that ''upon a final hearing of this cause, that a decree be entered cancelling and annulling any claim or pretense of the defendants that the above described property cannot be used for clothing manufacturing purposes under the provisions of said restrictive covenant, or in lieu thereof, for a cancellation of said restrictive covenant and that said clause in said deed be construed and held not to prohibit the manufacture of clothing on said property for the period of time therein prescribed, or in the alternative, that said clause be held to be null and void . . . .''

On the second day of February 1948, appellees entered into a conditional contract with E & W Garments, Inc., chartered under the laws of Mississippi, but wholly owned by Ely-Walker Dry Goods Company of St. Louis. The agreement was to lease the property here involved to the proposed lessee for the making of garments. The condition of the contract was the contingency of a favorable issue in a court decision as to the restrictive covenant. Accordingly, this clause was contained in the conditional contract:

''Lessors will continue with diligence legal action to obtain a decision of a court of competent jurisdiction that such purported restrictive covenant does not prevent the use of the buildings on said property as a garment factory, and will endeavor to obtain a final decision in such litigation as soon as possible.

''If Lessors have obtained a favorable final decision in such litigation, then Lessee shall be obligated to immediately execute such lease and commence payment of the rent thereunder, provided that Lessee may at its option elect to execute said lease prior to the termination

of such litigation and enter into possession of the premises, subject to the final outcome of such litigation.''

Appellants filed a motion in the chancery court seeking to have the court require complainants to make E & W Garments. Inc., a party-defendant, which motion was overruled. At the time suit was filed, appellants argue, appellees had entered into a written contract with one Niehaus, acting as agent for Ely & Walker Dry Goods Company, and for a corporation wholly owned by that firm, to be formed. The Niehaus contract expired, and the new conditional contract for lease was made by appellees with E & W Garments, Inc., the corporation Niehaus agreed to form, it is argued. Appellants say that under these circumstances E & W Garments, Inc. was a necessary party to this suit.

Appellees call attention to the fact that the conditional contract with E & W Garments, Inc., was executed after this litigation had started, and said corporation had no obligation to execute a lease unless and until this litigation ended in accord with their views, that is, successfully, as they wanted the court to decide it. Appellees take the position that E & W Garments, Inc., propose to be only tenants of appellees, citing Loven et al. v. Roper, 178 N. C. 581, 101 S. E. 263.

It has been held that █ as a general rule all persons who are materially interested in the event or subject matter, without whom no effective judgment or decree can be rendered, should be made parties, in a suit to quiet title. 51 C. J. Quieting Title, Section 137. The following Mississippi cases are cited to the foregoing text. Byrd, et al. v. Henderson, 139 Miss. 140, 104 So. 100; Terry v. Unknown Heirs of Gibson, 108 Miss. 749, 67 So. 209. The case at bar is a suit to cancel a covenant running with the land. █ E & W Garments, Inc., were interested alone in the outcome of the litigation, not inherently in the subject matter of the suit, either by contract to litigate or inherent property rights therein.

Appellants quote from Griffith's Mississippi Chancery Practice, Sec. 115, as follows: "In suits to cancel clouds the complainant . . . may proceed against those of his own choosing, subject to the requirement, of course, that when he chooses to attack a particular cloud or claim of title he should join all those interested in that specific and particular claim—as for instance, if he seek to cancel a certain deed as a cloud on his title he should make all of the grantees under the deed parties defendants, . . . ."

E & W Garments, Inc., own no part of the title to the property involved, the restrictive covenant was not made with it, and their only prospective relation to the property was that of tenants. So that, in our view, they had merely a concern in the outcome as affecting their developing into lessees, quite a different thing from the kind of interest Judge Griffith had in mind. Appellees quote the Florida Supreme Court: "At the time the bill was filed to quiet title and the final decree was recorded, Minge had no interest in the land, and he now has no right to intervene and become a party defendant. . . . 'The purchase of the land and the assignments of the judgments all occurred pendente lite. If Varn under the circumstances, is entitled to appear as a party defendant, then any assignee of his would also be entitled to appear, and the litigation could be protracted without end.'" Minge v. Davison, et al., 94 Fla. 1197, 115 So. 510, 511.

We think the chancellor was correct in overruling this motion.

Each side to the case introduced a number of experts in the textile trade, whatever that may mean, whether weaving or needle manufacturing. These were all distinguished, well-qualified and representative men from over the Nation. The purpose of their testimony was to demonstrate to the court that the phrase in the restrictive covenant set out, supra, had a universally, uniformly accepted meaning to the trade in Mississippi and Nationally. ▮▮▮ They, by their most interesting testimony,

demonstrated by their own disagreement and divergence of understanding of its significance, made manifest that the phrase is ambiguous, and not solvable by uniform trade understanding, and hence decree for neither side can rest on this testimony, in our judgment.

This situation justified the resort to the further aid of construction, that of the negotiations and conversations leading up to the adoption of the restrictive covenant. Appellees first introduced evidence thereof, and were followed by appellants, along the same line. The witnesses on this issue testified partly by oral testimony before the chancellor, partly by certified transcripts of their testimony in a Federal Court suit involving this same restrictive covenant and now pending in the Circuit Court of Appeals, and partly by deposition. Appellants contend that this evidence was not conflicting, but with that we cannot agree. ██ The appellees' witnesses contended that the words, "garment making", or kindred activities, were never used, and that Mr. Sanders insisted only that no cotton mill be operated there. For instance, R. H. Jones, one of the appellees, testified that Mr. Sanders said: "I don't want you boys opening up a cotton mill in McComb." On the other hand, appellants' witnesses declared that he was vehemently against the garment industry. As illustrative of the conflict, we will also quote a statement Mr. Sanders made: "I was very apprehensive all along during my negotiations about the wording, and during the writing kept cautioning Mr. McLain and Mr. Shaw to be sure that the wording of the contract be so constructed that there never could be operated in that building, during the life of the contract any of those types of knitting and weaving and garment factory, and chenille factory, etc. They assured me that they were covering that, and after they had drawn it I had occasion to talk to Bill McLain, and asked him if he was satisfied and if his associates were satisfied that all of those were covered properly, and he assured me they were and that it meant nothing to those folks, that we

could have put anything in there we wanted to; all they intended to do with it was to operate a war plant there.''

At the time of the purchase, the purchasers were interested only in obtaining the property in order to make a contract with the Maritime Commission of the United States for manufacturing rafts as instruments of war for the Government in the World War No. II then waging; and then contemplated no other purpose.

Appellants counsel dictated into the record the following stipulation as to the attorney, Mr. W. G. McLain, former part owner of the property, and attorney for the appellees during the negotiations, who probably dictated the deed, or at least did so in collaboration with Mr. Shaw, attorney for appellants. ''It may be assumed that Mr. W. G. McLain was asked this additional question: 'Please state to the best of your recollection as to whether or not garment factory or clothing manufacturing plant was ever mentioned by any of said parties in said conference in connection with said restrictive covenant and your best recollection as to whether there was any specific agreement that said restrictive covenant would cover a garment factory?' '' It was further stipulated that his answer was ''No.''

Johnson, Gillis and Jones testified that Mr. Sanders was insistent upon no cotton mill operation in the building, to protect Magnolia Textiles, Inc. at Magnolia, a cotton or weaving mill. Mr. Shaw, attorney for Magnolia Textiles, and his secretary, corroborated Mr. Sanders. We are forced to conclude that the findings of the chancellor, on this point, was based on conflicting testimony, and thus we are faced with the problem, regardless of how we might have adjudicated it as chancellor, and regardless of the fact that if the chancellor had decided in favor of appellants, he would have had sufficient substantial evidence to sustain the decree, whether we can reverse the chancellor as being manifestly wrong and against the overwhelming weight of the evidence.

In Bradley v. Howell, 161 Miss. 346, 133 So. 660, we held that unless the Supreme Court, on appeal in a suit on a contract, in view of ambiguities therein, could say with requisite assurance that the chancellor was wrong, the decree must be affirmed. By a long line of decisions, we have held that chancellor's findings, on conflicting evidence, are conclusive on appeal unless manifestly wrong. See Cole v. Standard Life Ins. Co., 170 Miss. 330, 154 So. 353. And in Partee v. Bedford, 51 Miss. 84, this Court held that a decree substantially supported by competent evidence would not be reversed. We must, in such a situation, abide by the chancellor's decree. Chapman v. Federal Land Bank of New Orleans, 185 So. 586; Hays v. Lyon, 192 Miss. 858, 7 So. (2d) 523; Evans, et al. v. City of Jackson, 201 Miss. 14, 28 So. (2d) 249. We have also held that where the evidence is equally balanced or nearly so, and would warrant a verdict for either party, the verdict given will not be disturbed. Greenville Brick & Improvement Co. v. Hyatt & Smith Mfg. Co., 11 So. 471. These cases could be increased numerously by others to the same effect, but it would unduly and unnecessarily prolong this opinion. However, in view of these mandatory authorities, under the rule of stare decisis, we are constrained to affirm the decree of the chancellor.

The record consisted of six large volumes, and the able but voluminous briefs encompassed all "the law and the prophets." However, we deem it unnecessary to discuss any features of the case, or briefs, other than the ones we have here set out in this opinion. But we must pay a tribute to the energy and ability of counsel on both sides in marshalling the evidence and witnesses, and in their comprehensive arguments, all of which we have meticulously examined and considered in several conferences.

We here reproduce a reference to an opinion by this Court from a recent issue of Case and Comment: "Though a brief may illustrate true eloquence, 'the lightning of passion, playing along the line of thought'—

the Court must content itself with 'the ice cold law, from which no friction will excite sparks.' '' Citing Illinois Central R. Co. v. Johnson, 77 Miss. 727, 28 So. 753, 51 L. R. A. 837.

The chancellor decided that the restrictive covenant contained in the deed involved here did not prohibit the use of the described property as a place to manufacture garments or other similar articles of wearing apparel. A decree was entered consonant with the prayer of the original bill, and a cross-bill filed by the appellants was dismissed. In view of what we have said, supra, we repeat that we are constrained to affirm the decree of the chancery court.

Affirmed.