WARREN, et al. *v.* CLARK

No. 40470 April 22, 1957 94 So. 2d 323

*Mitchell & Simmerman,* Pascagoula, for appellants.

*Watts & Colmer,* Pascagoula; *W. S. Murphy,* Lucedale, for appellee.

GILLESPIE, J.

During World War I the Dierks-Blodgett Shipbuilding Company acquired a parcel of land in the City of Pascagoula. The western boundary of the land was the East Pascagoula River. The shipbuilding company dredged a canal or slip from the river east about a thousand feet, more or less. The slip was about 200 feet wide,

but the end toward the river was wider. A wharf was built along the south side of the slip from a point some distance out into the river eastward about 700 feet. This wharf extended out from the south bank into the slip about 20 or 30 feet. Ways were constructed on that part of the land south of the slip where ships were constructed and launched into the river, after which they were brought into the slip and finished and rigged while moored at the wharf. No wharf was built on the north side of the slip. Thereafter three boat houses were constructed in the slip at the east end of the wharf and extended into the slip the same distance as the wharf. These boat houses fronted on the property deeded to Clafton F. Warren, one of the appellants. Another boat house was built towards the eastern end of the slip on the north side opposite the three boat houses on the south side. No other structures were in the slip when deeds, hereafter described, were made to appellants and appellee.

F. H. Dierks and DeVere Dierks acquired title to all the land fronting on the slip and we will assume, without deciding, that they also acquired the fee simple title to the slip.

On July 30, 1946, F. H. and DeVere Dierks executed and delivered to appellant Clafton F. Warren a deed to a parcel of land measuring 100 feet along the south side and near the east end of the slip and extending back south to a street. Along the north end of the parcel of land deeded to Clafton F. Warren were the three boat houses built in the slip, and which extended into the slip about 30 feet. This deed was duly recorded on November 9, 1946, and contained the following provisions:

"Grantee shall have the right to use the waters of the dredged slip, but not to the exclusion of grantors or other persons having a lawful right to use said slip. Wharves may be built by grantees in front of the prop-

erty here conveyed, which wharves are not to extend beyond the Eastern edge of Grantee property or further out in the slip than the extension of the present wharf or line of piling of the wharf formerly owned and operated by Grantors.

"It is understood that one of the grantor's has a boat house in the dredged slip near the property hereby conveyed, and as a part of the consideration it is understood that Grantees will not do anything in connection with the slip or use of this property which will interfere with the use and enjoyment of said boat house by Grantors, or either of them, for the use of their boats, launch or other craft."

On January 28, 1947, F. H. Dierks and DeVere Dierks entered into a written contract with appellant, Robert C. Warren, to sell to the latter certain property presently to be described. This contract was duly acknowledged and was filed for record on August 10, 1950. Pursuant to said contract, and after the full purchase price had been paid, F. H. and DeVere Dierks, on July 24, 1953, executed and delivered to Robert C. Warren a deed conveying all the land lying along the south side of the slip between the west line of the property deeded to Clafton F. Warren and the East Pascagoula River and extending back south to the street that bounded Clafton F. Warren's property on the south. This deed was filed for record on January 22, 1955, and provided:

"It is expressly understood that this conveyance is executed to each and all of the following covenants and conditions, all of which shall constitute covenants running with the land, and shall be and remain binding upon the Grantee herein, his grantees, successors and assigns, namely:

"(I) The Grantee shall have the right to use the waters of the dredged slip on the North of the property, but not to the exclusion of grantors or other persons

having a lawful right to use said slip. Wharves may be built by the Grantee in the slip which lies to the North of the property here conveyed, which wharves, however, are not to extend beyond the Northern edge of the wharf line or line of piling of the wharf formerly owned and operated by Grantors as same existed on January 28th, 1947.

"(II). It is understood that one of the Grantor's has a boat house in the dredged slip opposite the property hereby conveyed, and as a part of the consideration, it is understood that Grantee will not do anything in connection with the slip or use this property which will interfere with the use and enjoyment of said boat house by Grantors, or either of them, for the use of their boats, launches or other water-craft.

"(III). It is understood that Grantors own the slip and a strip of ground lying to the North and running around the slip, and a strip of land lying North of the O'Donohoe property and situated between the west line of Magnolia Street and property conveyed by Grantors to C. F. Warren. No conveyance of the above is intended hereby."

Clafton F. Warren took possession of the land conveyed to him on the date of his deed, and Robert C. Warren took possession of the land conveyed to him on the date of his contract with the Dierks, January 28, 1947.

On October 10, 1955, F. H. and DeVere Dierks conveyed to the complainant John H. Clark the remainder of the land surrounding and fronting on the slip, being all the land bordering on the north side of the slip, the east end, and about 75 or 100 feet on the south side at the east end lying east of that part conveyed to Clafton F. Warren. This deed to complainant provided:

"The undersigned do also convey hereby such interest in the portion of Cedar Street lying between the dredged slip and the North line of the Rene Krebs Tract

as they may own, and do also convey to the grantee herein such interest in the dredged slip which lies particially in Lot 8 and Lots 26 and 27 of the said Rene Krebs tract as they may own.

"This conveyance is executed, however, expressly subject to the following:

"(1) Those certain rights as to the use of the waters of the dredged slip as have been heretofore granted and conveyed by the undersigned to Robert C. Warren and Clafton Warren."

This suit was filed March 6, 1956. The bill of complaint set out the ownership of the several tracts, alleged that complainant got the fee simple title to the slip, alleged that Clafton F. Warren and Robert C. Warren were "given the right to use the waters of the dredged slip or canal on the north side of the property but not to the exclusion of grantors (Dierks) or other persons having a lawful right to use said slip." The bill further set out the rights of Robert C. Warren to build wharfs and use the slip in accordance with the deeds; that the Dierks conveyed the slip to complainant in fee simple; that Robert C. Warren had placed a large barge in the slip that was partially sunk and the barge constituted a hinderance to navigation in the slip; that Robert C. Warren had refused to remove the barge upon demand of complainant. The bill prayed that "the Complainant herein be declared to be the sole owner with fee simple title to said dredged slip or canal; and that the said Defendants be required and ordered by Decree of this Court to immediately remove said sunken barge and other obstacle or hinderance that has been placed there by said Defendants and the Complainant prays for such other and different relief that he may in the premises be entitled to receive."

There was no other prayer. The bill did not deraign title or allege that the defendants, Clafton F. and Rob-

ert C. Warren, were the only parties having or claiming any interest in the slip. In the main, the answer of Clafton F. and Robert C. Warren asserted the right to use the waters of the slip as provided in their deeds and denied that they had made any use of the slip not granted to them in the deeds.

The partially sunken barge was removed under an agreed order prior to trial and need not be further considered.

When Robert C. Warren took possession of the land conveyed to him by the Dierks in January, 1947, he began to use and continued to use the wharf that had been built by the shipbuilding company about 1918. He made no extension of the wharf. The only addition he made to the wharf facilities was to construct two walkways from the south bank of the slip out to the wharf. Robert C. Warren used the waters of the slip and the wharf for commercial maritime purposes from the time he took possession until the suit was tried. He rented mooring space along the wharf and repaired and did business with ships tied up to the wharf. The ships tied to the wharf were of various kinds. He operated what he called a shipyard but had not actually constructed any ships, but had repaired some and sold others supplies. He usually had ships tied up along the entire length of the wharf in front of his property. He testified, and there appears to be no dispute thereof as to a period of six months preceding the trial, that he tied only one boat to the wharf inside or east of a point opposite the abutment of the bridge of U. S. Highway 90, which now runs through the property purchased by the Warrens; that he frequently tied up two ships side by side from opposite the abutment west to the river in the wider portion of the slip.

The proof shows without dispute that from 1947 to 1955, when Clark bought his property, that the Dierks

never complained of the use being made of the slip and wharf by Robert C. Warren, except one time when three ships tied up abreast, Dierks requested Robert C. Warren to move the third ship. This was promptly done and the record shows without dispute that this third ship was a trespasser not authorized by Robert C. Warren to come into the slip. All during the time prior to the purchase of the property by complainant, there had been no wharf on the north side of the slip, and the use made of the slip by Robert C. Warren did not interfere with the use of the boat house owned by the Dierks and located on the north side of the slip. When complainant acquired his deed from the Dierks he constructed a wharf on the north side of the slip and converted the Dierks boat house into a shrimp packing plant, making some additions and extension of the boat house.

Complainant, in the operation of his shrimp plant, used the slip to accomodate 25 to 40 shrimp boats and sometimes all came into the slip at one time. At other times it was necessary to accommodate a lesser number. It was advantageous to complainant's business to be able to accommodate all the shrimp boats. He had a better chance to buy their shrimp if he had a safe place for the boats to tie up. Clark was allowed to testify that he needed the entire slip, including the south side. After complainant began operating the shrimp plant, Robert C. Warren continued to tie up ships to the wharf in front of his property as he had done since he took possession. At the time of the trial, Robert C. Warren had moored to the east end of the wharf a ship 84 feet long with a 16-foot beam. This was near the area where the shrimp boats needed to turn after unloading shrimp at complainant's plant, and was a hinderance to the shrimp boats. The ships were tied two abreast from opposite the bridge abutment to the river. There was some testimony that Robert C. Warren had tied up four ships

abreast, but not during the year of the trial, and there is no proof of more than two ships being tied abreast insofar as the injunction feature of this case is concerned. Clark testified that when Robert C. Warren tied two ships abreast it "constitutes a hazard when I bring my boats over there." He did not say how many boats of his own were tied up abreast on his wharf on the north side so as to make it hazardous when Warren tied up two abreast on the south wharf, but complainant's witness, Mr. Hermes Gautier, testified that two boats tied up abreast on the south wharf and two boats tied up abreast on the north, or Clark's wharf, would not interfere with the use of the slip in connection with complainant's boats coming and going, but it would interfere if four were tied up abreast on one side and two on the other. This same witness, who had been familiar with the slip since it had been built, testified that he had seen three or four boats tied up abreast of the south wharf since complainant acquired his title, but he did not state that he had seen more than two within six months prior to the trial. He testified that during the past six months (prior to the trial) he had seen two boats tied abreast on the south wharf out on the end towards the river. Mr. Gautier further testified that there is about 150 feet of water between the south edge of the wharf on the north side of the slip and the north edge of the wharf on the south, but towards the east end it is narrower. The ships referred to in this opinion were not over 20 feet wide on the average.

This conclusively appears from the record: That so long as Robert C. Warren did not tie up abreast more than two vessels on the south wharf from opposite the bridge abutment to the west end of the wharf and one vessel on the part of the wharf east of the bridge abutment, it will not interfere with complainant's boats entering and leaving the slip, unless complainant himself

creates a hinderance by tieing more than two boats abreast on the north wharf. Whether the complainant may complain of the interference of vessels tied single on the eastern part of the south wharf because it interferes with the shrimp boats turning after unloading will be later considered. It also appears conclusively that Robert C. Warren was not mooring more than two ships abreast on the western part of the slip nor more than one on the eastern part at the time of the trial, and was not threatening to do so.

Complainant testified that the operation of the boat houses north of Clafton F. Warren's property did not interfere with complainant's shrimping operations, and there is no proof in the record that the use of Clafton F. Warren's boat houses interfered with complainant in any way.

The proof showed that both appellants had conveyed their respective tracts of land to others. Robert C. Warren had reacquired his property, his deed having been given to secure a debt. Title to the tract purchased from the Dierks by Clafton F. Warren is in other persons not made parties to the suit. Clafton Warren has a lease on the parcel formerly owned by him with option to purchase. All these deeds were of record when complainant filed his original bill.

The chancellor adjudged complainant to be the owner in fee simple of the dredged slip or canal along with all piers, wharves, piling, boat houses and all other structures and improvements therein, and that appellants acquired no easement, right, title or interest in the use of the waters of the slip or the wharves, piers or other improvements in the slip. Appellants were perpetually enjoined from in any way interfering with appellee in the ownership, control, use, and management of the slip, and perpetually enjoined Clafton F. and Robert C. Warren from using the waters, piers, wharves and pilings

or other improvements in the slip unless with the permission of the appellee. Appellants were ordered to remove within ten days all boats, fishing craft or other water craft moored or tied up on the wharf on the south side of the slip, and to remove within said time any other property or appellants from the slip and the wharves.

Insofar as the decree sought to confirm title to the slip in appellee, the decree must be reversed for two reasons. Appellee did not deraign his title as required by the statute, Code Section 1325, nor did he give a good and valid reason why he did not deraign title. We would not reverse for this reason alone since the proof showed title came from a common source, except for the fact that the appellee failed to deraign title from the common source to the necessary parties to the suit, nor did the bill allege that he joined in the suit all parties interested in the land so far as known to complainant, or as he could ascertain by diligent inquiry. Code Sections 1323 and 1324. This deficiency in the bill led to another in that the owners of the tract purchased from the Dierks by Clafton F. Warren were not made parties to the suit. Under these circumstances, no valid decree confirming title to the slip could be made.

The adjudication that appellants acquired no easement to use the waters of the slip, and did not have the right to use the waters of the slip, and did not have the right to use the wharves and improvements out to the wharf line is manifestly erroneous. The provisions of the deeds granted to appellants the very rights that the decree denies them. Furthermore, the appellee's bill of complaint specifically recognized the right of appellants to use the slip and the wharves on the south side of the slip out to the original wharf line. On the injunction feature of the case, we overlook the obvious insufficiencies of the bill and the prayer thereof, since the case was tried with both parties understanding that

the issue, as to that feature of the case, was whether the Warrens had a right to make such use of the waters of the slip and the wharves and other improvements as they were using at the time of the trial and at the time suit was filed. We do not feel that this suit reqiures a delineation of all the rights, and relative rights, of the Warrens on the one hand and the appellee on the other, but to some extent, at least, those relative rights must be adjudged.

The main issue on the injunction feature of the case is whether the Warrens, particularly Robert C., was making use of the waters and improvements within the slip in excess of the rights granted under the deeds.

 █ Appellant Clafton F. Warren is the present lessee of the strip of land originally purchased by him from the Dierks. The boat houses in the slip along the northern boundary of his 100 foot strip of land do not extend further into the slip than the wharf line as it existed when Clafton F. Warren acquired his parcel of land. He was granted an easement to use the waters of the slip, but not to the exclusion of the grantors or other persons having a lawful right to use the slip. There is no testimony that Clafton F. Warren has ever used the waters of the slip so as to interfere with the Dierks when they owned the remainder of the land bordering on the slip or with complainant since he acquired the land. The deed clearly and in plain and unambiguous language granted the use of the waters of the slip. The boat houses do not extend past the permissive building line of the old line of piling or wharf. The deed gave the right to the exclusive use of the slip to the wharf line limits thus defined. Complainants seemed to have no complaint against Clafton F. Warren except that complainant wanted the exclusive use of the waters of the slip from bank to bank and from the river to the east

end. The decree was erroneous in granting any relief as against Clafton F. Warren.

■■ The deed from the Dierks to Robert C. Warren expressly made the provisions as to the use of the slip covenants running with the land. Not only was Warren's deed of public record when appellee received his conveyance from the Dierks, but appellee's deed specifically provided that it was subject to "those certain rights as to the use of the waters of the dredged slip as have been heretofore granted and conveyed by the undersigned to Robert C. Warren and Clafton Warren." Conceding without deciding that appellee did take a fee simple title to the slip, it was subject to the rights in the slip acquired by both the Warrens. The right of the Warrens was the dominant estate to the extent granted and could not be revoked or limited by the grantor, his successors in title, or, for that matter, the courts. Robert C. Warren acquired the use of the slip, but not to the exclusion of the grantors or other persons having a lawful right to use the said slip. He had the right to build wharves in the slip along his property but was limited in that the wharves could not extend beyond the wharf line or line of piling as same existed on January 28, 1947. Actually, the proof showed that Robert C. Warren did not have to build a wharf since the old wharf was still there as originally built before he got his deed. Robert C. Warren acquired the exclusive use of the slip fronting his property to the north line of the wharf. ■ ■ As to whether Robert C. Warren had the right to moor water craft to the wharf, the deed granted the use of the slip and the wharf. The right to build and use the wharf, as granted in the deed, would be useless without the right to tie water craft to it. It cannot be said that Robert C. Warren did not have the right to tie water craft to the wharf, and if the mooring of ships to the east end of the wharf is inconvenient to appellee, he may not be

heard to complain, that right was inherent in the grant to Robert C. Warren. He had the right to tie two ships abreast as he did. west of a point opposite the bridge abutment, and such practice did not interfere with the use of the slip except when complainant congested the slip with more than two ships abreast on the north wharf. Under the deeds here involved, appellee did not acquire greater mooring rights on the north side of the slip than Robert C. Warren acquired on the south side.

■■ Considered in the light most favorable to appellee, in view of the conveyances here involved, the evidence does not show that either of the Warrens have made use of the slip in excess of the rights acquired by them under their deeds and subject to which appellee made his purchase. We have no difficulty in arriving at the conclusion that whatever difficulties appellee has experienced in the use of the slip by his boats was due to the congestion of the slip by appellee's own boats and those brought into the slip by him.

The decree of the lower court is reversed in its entirety and appellee's bill of complaint is dismissed.

Reversed and bill dismissed.

*Roberds, P. J.,* and *Hall, Holmes* and *Ethridge,* JJ., concur.