# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00358-COA

**MERLE GEORGE SMITH, JR.**                                    **APPELLANT**

**v.**

**CARLA ANN PETTIGREW**                                        **APPELLEE**

DATE OF JUDGMENT:              02/08/2016
TRIAL JUDGE:                   HON. PATRICIA D. WISE
COURT FROM WHICH APPEALED:     HINDS COUNTY CHANCERY COURT,
                               FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:        JOHN HINTON DOWNEY
ATTORNEY FOR APPELLEE:         H. BYRON CARTER III
NATURE OF THE CASE:            CIVIL - REAL PROPERTY
TRIAL COURT DISPOSITION:       DENIED APPELLANT'S CLAIM TO
                               CONFIRM TITLE AND REMOVE CLOUD
                               ON TITLE IN FAVOR OF THE APPELLEE
DISPOSITION:                   AFFIRMED - 07/18/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND WESTBROOKS, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     Merle Smith Jr. (Merle Jr.), provided his father, Merle Smith Sr. (Merle Sr.), funds to purchase property. The deed for the property conveyed the land to "Merle George Smith." During Merle Sr.'s residency at the property, he paid the taxes on the property and maintained it. With his heath declining, Merle Sr. deeded the property to his live-in companion, Carla Pettigrew (Carla). Sometime later, Merle Sr. passed away, and Carla continued to reside on the property and pay the property taxes.

¶2.     Merle Jr. brought an action against Carla in the Hinds County Chancery Court to

confirm title and to remove clouds on title—claiming that the property was actually deeded to him and not Merle Sr. And thus, Merle Jr. argued that the property was never Merle Sr.'s to convey to Carla. A trial was held, testimony was heard, and a final judgment was rendered in favor of Carla. In her written order and opinion, the chancellor found, among other things, that Merle Jr. failed to deraign title, and that the land was deeded to Merle Sr.—not Merle Jr. Merle Jr. now appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     In 1999 Merle Jr. took out a bank loan to purchase property for his father, Merle Sr.[1] The property included a mobile home and the lot it sat on. Merle Jr. gave the money to Merle Sr. to purchase the property from Gerald and Tia Young. The deed for the property designated the grantee as "Merle George Smith." Allegedly, Merle Jr. purchased the property so that his father would have a place to live.

¶4.     In March 2011, with his health declining, Merle Sr. deeded the property to Carla—his live-in companion—while reserving himself a life estate. He signed the deed "Merle George Smith." Merle Sr. died in 2012. And in May 2014, Merle Jr. sought cancellation of the deed to Carla as void and confirmation of title in himself and further prayed for general relief.

¶5.     Appearing pro se, Carla filed an answer, which admitted that the 1999 deed from the Youngs conveyed the property to the grantee in fee simple absolute; admitted that Merle Sr., using the name "Merle George Smith," had executed the March 3, 2011 deed purporting to convey her the property; and denied the other allegations of Merle Jr.'s complaint. A trial

---

[1] Merle Jr. received a loan from Trustmark Bank using a certificate of deposit to buy the property. There was no mortgage on the property.

2

was held.  Carla represented herself throughout the trial.

¶6.    Gerald Young testified first.  Young testified that he was the former owner of the real property and the mobile home. Young had rental property, and Merle Sr. rented from him. He further testified that he wanted to get out of the rental business, and so he worked up a deal and sold the property to the same person who was renting the property—Merle Sr. Young testified that he did not remember much about the deed, but upon review, identified it as the one he and his ex-wife had signed.  And while he was not certain of the agreed-upon price, Young agreed that the property sold for approximately $8,000.  Young testified that he did not know if the deed was to Merle Jr. or Sr., but that he sold it to the man who was renting the property—which was Merle Sr.  Young further testified that Bob Lawrence was the attorney who drafted the deed, and that he did not recall who gave him the check or where it came from.  On cross-examination by Carla, Young said that he thought he had sold the property to the person who was renting it at the time.  Young described the man he sold the property to as appearing around sixty years old—with poor skin and health issues.  When the chancery court examined Young, he testified that the tenant to whom he sold the property was not Merle Jr.—who was sitting in the courtroom.

¶7.    Lawrence—the lawyer that drafted the deed—testified that he had checked his records, and while he could not recall anything about what happened or whom he saw in July 1999, he had a copy of the deed he had prepared for the Youngs.  Lawrence testified that he did not know where he or his secretary had gotten the information to put on the deed.  But the deed indicated that the grantee's address was 555 Reel St., Jackson, Mississippi 39212.

3

Additionally, the grantee's phone number was listed on the deed. Lawrence also had a copy of his phone ledger from 1999, which showed he had a phone call on July 21 from Young requesting Lawrence "to handle a closing for him." Lawrence's records showed that the Youngs then faxed him a copy of their deed to the property so that he had the legal description. Lawrence further confirmed that the grantee's address listed on the deed was not the address of the property that was being sold. And upon further questioning by the chancery court, Lawrence explained that the address of the property being conveyed was not on the deed, and that "the only time [he] would do that is if the street address corresponds with the mailing address of the grantee." Lawrence also testified that he did not know Merle Jr. or Sr., and he could not remember if he had ever met either one. Lawrence further testified that he had prepared the deed without a closing, and he was not aware of what consideration was exchanged.

¶8. Merle Jr. testified that when the deed from the Youngs was executed in 1999, he was living at 555 Reel Street, and his phone number was the same as the number listed on the deed. Merle Jr. stated that he purchased the property for Merle Sr. after Merle Sr. came back from Kosiusko to work for Merle Jr. At the time, Merle Sr. was renting the mobile home and had an option to buy it. Merle Jr. testified that he went to the bank and got a loan to buy the property. When questioned by the chancery court, Merle Jr. testified that it was his father that made the deal with Young, and he provided the money. Merle Jr. claimed that the deed was put in his name, and not his father's. Merle Jr. then testified to the alleged agreement between his father and himself. The agreement, Merle Jr. stated, was that if Merle Sr. paid

4

the taxes and utilities, he could live there and work for Merle Jr. Merle Jr. admitted that he gave the Youngs' check to Merle Sr., and that he never met the Youngs or Lawrence. Merle Sr. complied with the alleged agreement and payed taxes and utilities.

¶9.	Merle Jr. also testified that after the property was purchased from the Youngs, the tax notices were sent to his residence; first, at the Reel Street address listed on the deed, and then, to him at 4277 Henderson Road, Jackson, where he moved in 2000. He had located several copies of these tax documents and offered one showing taxes paid on March 8, 2011. It listed the taxpayer as "Merle G. Smith" at 4277 Henderson Road, Jackson. This document was introduced into evidence. On further examination by Carla and the chancery court, Merle Jr. stated that his father had gotten behind on the taxes, but was supposed to pay them under their agreement even though he, Merle Jr., owned the property. He further stated that when Merle Sr. was old enough, he filed for a tax exemption.

¶10.	Charles Stanford, an abstractor, testified that the land-roll detail showed the owner of the property to be Carla Pettigrew. He examined the deed with Carla, which showed a life estate was reserved. Although he did not have a copy of that deed, he informed the chancellor that he would provide her with one.

¶11.	The last witness to testify was Carla. She testified that she resides at the 985 Hook Street address. She stated that—since Merle Sr.'s death in 2012—she was the owner of the property, and she had been paying taxes on the property for four years. Carla testified that she had first met Merle Sr. in November 1999—when he was living on the Hook Street property. She said that while she was not with him when he paid for the property or got the

5

deed, he told her about "the circumstances." Carla had been living on the property since 2002. She stated that she did not know where Merle Jr. lived. Carla paid the taxes starting with the 2012 taxes that were due on or before April 1, 2012. The taxes were delinquent, and she had to redeem the property. Because it was a life estate, Carla filed for a homestead exemption to put the property in her name. Carla also had to give an easement to the City of Byram in order to get sewer access on the property, and to do so, she had to show the city the deed. Additionally, Carla introduced Merle Sr.'s unprobated will, which appointed her as executor, and purported to leave her "the trailer and lot" where Merle Sr. lived.

¶12. After the conclusion of the trial, the chancellor issued an opinion and order. First, the order held that Merle Jr. should be denied any relief because he failed to deraign title, and that he failed to show perfect title in himself—even though this issue never arose at trial. Second, the order held that Merle Jr. could not sue to have title confirmed, because he was not in possession of the property and it was not unoccupied. And finally, the order held that it was Merle Sr.—not Merle Jr.—to whom the Youngs conveyed the property in 1999. Merle Jr. appeals.

## STANDARD OF REVIEW

¶13. The Mississippi Supreme Court has held that an appellate court "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard." *Wilburn v. Wilburn*, 991 So. 2d 1185, 1190 (¶10) (Miss. 2008). Regarding legal questions, this Court applies a de novo standard of review. *Id*.

6

**DISCUSSION**

## I. The chancellor did not err in finding that Merle Jr. was precluded from suing Carla to confirm title because he was not in possession.

¶14. On appeal, Merle Jr. argues that the chancellor erred in finding that Merle Jr. was precluded from suing Carla—to confirm title—because she, and not he, possessed the property. Specifically, Merle Jr. asserts that in making her determination, the chancellor relied on the wrong statute.

¶15. Under Mississippi Code Annotated section 11-17-29 (Rev. 2004), to have *title confirmed*, the claimant must either possess the property or the property must be unoccupied. *See also Dixon v. Parker*, 831 So. 2d 1202, 1204 (¶8) (Miss. Ct. App. 2002).

¶16. Merle Jr. argues that the chancellor should have relied on Mississippi Code Annotated section 11-17-31 (Rev. 2004), which he argues stands for the proposition that one does not have to possess the property to bring an action to confirm title. Merle Jr.'s reliance on this statute, however, is misplaced. Section 11-17-31 provides that the real owner of property may bring an action in chancery court to have a "conveyance or other evidence or claim of title *cancelled*, and such cloud, doubt or suspicion removed from said title, whether such real owner be in possession or not . . . ." *Id.* (emphasis added). Merle Jr. conflates these separate and distinct causes of action. To be sure, section 11-17-31 applies to suits to cancel title, but section 11-17-31 does *not* apply to suits to confirm title. And while it is true that Merle Jr. would not have to be in possession to bring a suit to have title canceled, he would have to possess the property, or the property must have been unoccupied, to bring a suit to confirm title.

¶17. In her opinion, the chancellor found that Merle Jr. was precluded from bringing a suit to confirm title because he did not possess the property and the property was not unoccupied. We agree. The record shows that Merle Jr. testified that he had never possessed the property. Instead, Carla had lived on the property since Merle Sr. conveyed the property to her through a warranty deed. As a result, we do not find that the chancellor erred in finding that—because Merle Jr. did not possess the property, and because the property was occupied by Carla—Merle Jr. was precluded from bring a suit to confirm title. This issue is without merit.

II.    **The chancellor did not err in finding that Merle Jr. failed to deraign title.**

¶18. Next, Merle Jr. argues that the chancellor erred by finding that Merle Jr. failed to meet his burden of proof to deraign title—showing perfect title in himself—in his suit to remove clouds.

¶19. "In all suits to confirm title or to remove clouds it is the duty of the complainant to deraign title." *Russell v. Town of Hickory*, 116 Miss. 46, 52, 76 So. 825, 825 (1917). The claimant may bring such a suit against someone in possession. *Dixon*, 831 So. 2d at 1204 (¶8) (citing *Broome v. Jackson*, 193 Miss. 66, 72, 7 So. 2d 829, 831 (1942)). "The complainant . . . has the burden of showing perfect title in himself." *Culbertson v. Dixie Oil Co.*, 467 So. 2d 952, 954 (Miss. 1985). But where the title of the parties came from a common source, complete deraignment is not required. *Warren v. Clark*, 230 Miss. 873, 94 So. 2d 323, 328 (1957).

¶20. On appeal, Merle Jr. argues that he was not required to deraign title because Carla and

8

he claim title from a common source—the Youngs. We disagree. Addressing common source, the our supreme court has held that "[w]hen . . . the defendant justifies his possession by showing that he holds [title] under another deed than that shown by the plaintiff, the effect of the proof of title from a common source is destroyed, and the plaintiff is put to the proof of his title without regard to the common source of title." *Hughes v. Wilkinson*, 28 Miss. 600, 606 (1855). Here, Merle Jr. claimed title under a deed from the Youngs; while on the other hand, Carla claimed title under a deed from Merle Sr. These are separate and distinct deeds—the source was not the same. Consequently, Merle Jr. was required to deraign his title, and the chancellor found that he failed to do so.

¶21. Additionally, Merle Jr. argues that the chancellor erred in finding that it was Merle Sr., and not Merle Jr., to whom the Youngs conveyed the property. We disagree. First, the record shows that Young testified that even though the deed used the name "Merle George Smith" it was his intent to convey the property to Merle Sr. Second, while Merle Jr. might have provided the money for the transaction, the record shows that it was Merle Sr. who provided the check to Young as payment for the property. In fact, Young testified that up until the day of the court hearing in 2016, he had never met Merle Jr. And third, the record shows that despite Merle Jr.'s claim to the property, he had never paid any property taxes on it, and had never paid for the maintenance or upkeep of the property.

¶22. Merle Jr. attempts to thwart the chancellor's findings by highlighting the fact that he paid for the property, and that the title was sent to his place of residence. Merle Jr. argues that this was undisputed proof of his alleged agreement with his father. Yet after

consideration of all of the testimony, the chancellor found Merle Jr.'s argument unpersuasive. That said, there is nothing in the record to allow us to find that the chancellor's conclusion was clearly erroneous.

¶23. Upon review of the record, we cannot say that the chancellor erred in finding that Merle Jr. failed to show perfect title in himself—and thus failed to deraign his title; nor can we say that the chancellor erred in finding that the Youngs conveyed the deed to Merle Sr. and not Merle Jr. This issue is without merit.

## CONCLUSION

¶24. Upon review of the record, we find no reversible error. We affirm.

¶25. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**