Dorotea Zaldivar V. De TENORIO,
Plaintiff,

v.

H. E. McGOWAN et al., Defendants.

Civ. A. No. 1608.

United States District Court,
S. D. Mississippi, E. D.

Oct. 1, 1973.

Vardaman S. Dunn, Jackson, Miss., and Paul M. Neville, Meridian, Miss., for plaintiff.

Tally D. Riddell, Quitman, Miss., and Jack H. Ewing, Jackson, Miss., for defendants.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

Dorotea Zaldivar V. De Tenorio, a non-resident alien of the United States and a citizen of the Republic of Honduras, brought this action against numerous Mississippi residents and non-residents, to confirm her title and interest in and to a 37 acre tract of land in Clarke County, Mississippi, more particularly described as:

"All of the NW¼ of NE¼, less 3 acres in the SW¼ of NW¼ of NE¼, lying South of the Shubuta and Vossburg Road, all in Section 22, Township 1, Range 14 East, containing

37 acres, more or less, in Clark County, Mississippi,"

subject only to such outstanding oil, gas and mineral leases or royalty conveyances as may have been executed by her. Plaintiff claims that she inherited a one-half interest in said tract from her sister of the whole blood, one Maria Obdulia Zaldivar McGowan, widow and sole heir of E. J. McGowan, deceased, the record owner of said tract prior to a 1968 state court confirmation of title suit in Clarke County, filed by H. E. McGowan, a defendant herein, and who was a brother of the aforesaid E. J. McGowan, deceased.

By an order of this Court, dated June 11, 1973, amending the pre-trial order of the same date, certain parties who failed to appear or participate in the pre-trial hearing were adjudged in default and their claims were cancelled and held for naught except as to any of said parties claiming through the aforesaid H. E. McGowan, deceased, or his assigns, in the event title in this action be confirmed in H. E. McGowan. These parties are Wiley Fairchild, Hattiesburg, Mississippi, a defendant to the original complaint and to the cross-complaint of H. E. McGowan, et al; J. L. Sellers, Hattiesburg, Mississippi, a defendant to the original complaint; Cecil E. Barnett, Laurel, Mississippi, and his assignee, Robert L. Thomsen, Jackson, Mississippi, defendants to the original complaint; Hess Pipeline Company, Wilmington, Delaware, a defendant to the original complaint; and Viking Oil Company, a Mississippi corporation, First Mississippi National Bank, Hattiesburg, Mississippi, John Bethea, Hattiesburg, Mississippi, and Anselmo Zaldivar, Hilario Zaldivar, Felipe Murillo Zaldivar, Adela Zaldivar, and Victor Zaldivar all of Puerto Cortes, Honduras, defendants to the cross-complaint of H. E. McGowan, et al.

The Court finds it unnecessary to detail in this opinion a recitation of all the various and numerous pleadings inasmuch as the aforesaid pre-trial order, as amended, succinctly and accurately reflects the alignment of the parties, the admitted matters and facts, pertinent documents, and the factual matters and legal issues in dispute. The trial of the case, heard to the Court, was confined to the matters set out in the pre-trial order and the pleadings made pursuant thereto.

In the pre-trial order, it was admitted that all jurisdictional questions were resolved as a result of an opinion dated November 10, 1971 and order rendered thereon wherein the Court found that it had jurisdiction under 28 U.S.C. § 1331, this action involving a construction of a treaty of the United States.

## FACTS ESTABLISHED IN THE PRE-TRIAL ORDER

The 37 acre tract of land in Clarke County, Mississippi, described above, was patented by the United States of America to one Marmaduke Gardner in 1841 and by mesne conveyances became vested in E. J. McGowan, then of Clarke County, who acquired same as grantee in two warranty deeds, namely: a deed from T. J. Evans dated November 17, 1911, recorded in Deed Book I–1 at page 197, conveying the N½ of NW¼ of NE¼, and the SW¼ of NW¼ of NE¼, less 3 acres, in Section 22, T 1, R 14 E, containing 27 acres, more or less; and a deed from J. W. McGowan dated December 15, 1915, recorded in Deed Book I–1 at Page 196, conveying the SE¼ of NW¼ of NE¼, in the same section, township and range, containing 10 acres, more or less, both of said deeds being filed for record on December 20, 1915, and recorded thereafter in the deed records of the Chancery Clerk of Clarke County. Copies of these deeds are exhibits herein.

About 1911, E. J. (Elbert John) McGowan went to Central America where he thereafter resided and worked in various Central American countries, including Panama and Honduras. He was lawfully married to Maria Obdulia Zaldivar, born in Honduras of Honduran parents. This marriage continued until the death of E. J. McGowan. There

were no children born of this marriage. E. J. McGowan and his wife took into their home and reared a child, Elsie Reina McGowan,[1] who was not their natural child, nor legally adopted by them, nor an heir at law of either E. J. McGowan or his wife. E. J. McGowan died intestate in the Republic of Panama on October 31, 1957, leaving as his sole heir at law, his wife, Maria Obdulia Zaldivar McGowan. She died intestate in the Republic of Honduras on February 28, 1969, without having remarried and without a child having been born to her and without having legally adopted a child. She was survived by one sister and one brother of the whole blood, namely a sister, Dorotea Zaldivar V. De Tenorio, plaintiff herein, and one brother, Felipe Murillo Zaldivar.[2] There were no other surviving brothers or sisters of the whole blood, or descendants of a brother or sister of the whole blood. The remaining brothers and sisters, viz:, Anselmo Zaldivar, Hilario Zaldivar, Adela Zaldivar and Victor Zaldivar, are of the half-blood, were named as defendants in the cross-complaint of H. E. McGowan, and have defaulted herein. Neither parent of Maria Obdulia Zaldivar McGowan survived her death. Nor did Maria Obdulia Zaldivar McGowan, widow of E. J. McGowan, ever renounce her Honduran citizenship. Although she resided in various localities with her husband, E. J. McGowan, a citizen of the United States, she remained a citizen of Honduras and died there.

After the death of E. J. McGowan, his brother, H. E. McGowan, received an official "Report of the Death of an American Citizen" from the Consul, American Foreign Service Panama. This report was produced on plaintiff's request and filed as an Exhibit herein.

Neither H. E. McGowan nor any member of the McGowan family communicated with Maria Obdulia Zaldivar McGowan upon or after the death of E. J. McGowan, or undertook to advise her concerning the estate of E. J. McGowan located in the United States. As stated above, Maria Obdulia Zaldivar McGowan, died intestate in Honduras on February 28, 1969, leaving as her sole heirs at law, a sister, plaintiff, Dorotea Zaldivar V. De Tenorio, and a brother, Felipe Murillo Zaldivar.

On August 14, 1968, prior to the death of the widow of E. J. McGowan, defendant, H. E. McGowan filed in the Chancery Court of Clarke County, Mississippi, a confirmation suit, No. 7852 on the docket of that court, against his brothers and sisters, the widow of a deceased brother residing in Mississippi, and against "the unknown heirs, if any, of E. J. McGowan, deceased." A final decree was entered on October 22, 1968, vesting the fee title in H. E. McGowan, but no attempt was made to serve process or give notice to Maria Obdulia Zaldivar McGowan, then residing in Honduras. Copies of all pleadings in this suit are exhibits herein.

The Treaty of Friendship, Commerce and Consular Rights existing between the United States and the Republic of Honduras, a copy of which is an exhibit herein, was in effect during all relevant periods of time.

Plaintiff Dorotea Zaldivar V. De Tenorio has executed oil, gas and mineral leases to W. Baldwin Lloyd, brought into the case by cross-claims filed by some of the original defendants. His factual

---

1. Elbert John McGowan, James Patrick McGowan and Louis Harold McGowan, minor children of Elsie Reina McGowan, deceased, by their legal guardian, Peter K. Smith, were named defendants in the original suit, answered, cross-claimed and challenged plaintiff's original claim to the entire fee, basing their claim to an interest in the realty through their mother, now deceased, as

an allegedly acknowledged daughter of E. J. McGowan. They have abandoned this claim and claim an undivided one-half interest in the realty, subject to mineral leases and royalties, by virtue of a quit claim deed from Felipe Murillo Zaldivar, brother of the whole blood of Maria Obdulia Zaldivar McGowan, the common source of plaintiff's claim.

2. See footnote No. 1.

claims coincide with those of his lessor, the plaintiff, Dorotea Zaldivar V. De Tenorio, and are applicable to the one-half interest she claims in the realty, subject to the reservation therein of a royalty interest. These leases are recorded in Book OGL 66 at page 238 and in Book OGL 67 at page 237 in Clarke County, and copies are exhibits herein. Felipe Murillo Zaldivar executed a deed covering his interest in the realty to Elbert John McGowan, James Patrick McGowan and Louis Harold McGowan, wards of Peter K. Smith, guardian of their estates, who, in turn, has executed oil, gas and mineral leases to Corsair Petroleum Corporation recorded in Book OGL 66 at pages 425, 427 and 429, retaining a royalty interest. These instruments, or certified copies, are exhibits herein.

Since the filing of the original complaint, Inexco Oil Company, a defendant herein, has drilled an oil well on a production unit including the 37 acre tract. Amoco Production Company, a defendant, is the operator of the well. The purchaser of the oil production is Miller Oil Purchasing Company, and the purchaser of the gas production is Tonkawa Gas Purchasing Company.

## PLEADINGS AND OTHER EVIDENCE

As a part of the pre-trial order plaintiff agreed to amend her complaint to reduce her claim to a one-half interest in the 37 acre tract, subject to the lease executed by her to W. Baldwin Lloyd, her title having been derived by inheritance through her sister, Maria Obdulia Zaldivar McGowan, who was survived by two and only two heirs, namely, the plaintiff, sister of the whole blood, and Felipe Murillo Zaldivar, brother of the whole blood. Plaintiff agreed to further amend her complaint to allege that since the initiation of this suit, a well has been drilled on an 80 acre unit which includes the land in controversy; that the well is now and has for some time been producing oil and gas; that the well was drilled by defendant, Inexco Oil Compa-

ny, but is now being operated by the defendant, Amoco Production Company, who is selling the oil and gas production, and that plaintiff is entitled to a full accounting and to a judgment for the proceeds accruing to her interest in the oil and gas produced and sold from said producing well and to the appointment of a Receiver to receive and invest the said proceeds pending termination of this litigation.

W. Baldwin Lloyd, holding a 7/8ths leasehold interest under leases from the plaintiff, Dorotea Zaldivar V. De Tenorio, agreed to amend his pleadings in line with the claim of his lessor.

Peter K. Smith, Guardian; Corsair Petroleum Corporation; Paul M. Neville, individually and as trustee; W. C. Falkenheimer, J. Logan Sewell, James F. Conn, and Alice B. Scroggins agreed to amend their pleadings to concede that a one-half interest was cast by inheritance upon Dorotea Zaldivar V. De Tenorio and to allege that the remaining one-half interest was cast by inheritance upon Felipe Murillo Zaldivar, who conveyed to the aforesaid wards of Peter K. Smith, guardian, through whom the remaining parties, next listed above, claim their titles and interests. The guardian and these parties also demand a full accounting and a judgment for the proceeds of oil production accruing to their interests.

These amendments have been made, and responses have been duly filed by the following defendants and cross-plaintiffs: H. E. McGowan, Hazel Draughon McGowan, Charles B. McGowan, Louise McGowan Hannah, M. M. McGowan, B. C. Burns, Sr., H. D. Burns, Sr., Blanche W. White, Inexco Oil Company, Pan American Petroleum Corporation, Amoco Production Company, Love Petroleum Company, James M. White and T. Carleton Billups.

All parties to the pre-trial order agreed that all exhibits introduced by the plaintiff and Peter K. Smith, would be applicable to the case for the plaintiff, Dorotea Zaldivar V. De Tenorio; cross-defendant, W. Baldwin Lloyd; and

defendants, Peter K. Smith, Guardian of Elbert John McGowan, James Patrick McGowan, and Louis Harold McGowan; Corsair Petroleum Corporation; Paul M. Neville, individually and as trustee; W. C. Falkenheimer, J. Logan Sewall, James F. Conn and Alice B. Scoggins.

The parties agreed that all exhibits introduced by defendant, H. E. McGowan, would be applicable to his case and also to other defendants, namely, Hazel Draughon McGowan; Charles B. McGowan; Louise McGowan Hannah; M. M. McGowan; B. C. Burns, Sr.; H. D. Burns, Sr.; Blanche N. White; Inexco Oil Company; Pan American Petroleum Corporation; Amoco Production Company; Love Petroleum Company; James W. White; and T. Carleton Billups.

Plaintiff, Dorotea Zaldivar V. De Tenorio, appeared and testified. She spoke no English and testified through a Spanish interpreter. She stated that she was born in 1905 in the Republic of Honduras and has remained a Honduran citizen. Her parents, Phillipe Murillo and Perfecta Zaldivar died many years ago. She went to school through the fifth grade in the small town of Trisagio, close to Puerto Cortes, Honduras. Obdulia was her older sister by two years and died in 1969 in Puerto Cortes. She and Obdulia lived together for many years both before and after the death of E. J. McGowan. The witness first met E. J. McGowan in Guanchia, Honduras, prior to his marriage to Obdulia. The witness often visited them by train. She stated that E. J. McGowan married her sister in 1940 in Costa Rica. Obdulia was then 37 years of age. After E. J.'s death in Panama, Obdulia returned to Honduras and lived with the witness until her death. During this time the sisters saw and talked with each other every day. They knew nothing of the United States or E. J.'s life in the State of Mississippi, or that he owned property there. Obdulia spoke very little English. She and her husband conversed in Spanish which he spoke very well. The witness said she never heard them discuss with each other his property in Mississippi. Nor did she or her sister know anything of the treaty between the United States and Honduras. On cross-examination, the witness said she first learned of her interest in the tract involved herein about four years prior to the trial date, being about two years after her sister's death, when she was visited by some people from the United States. She had a snapshot in her purse, and identified it with a man in the courtroom whose name she did not know. She also identified her brother, Felipe Murillo Zaldivar, in the picture, and stated that he is now residing in Guatemala. She recognized her signature on the oil and gas leases which she executed in favor of W. Baldwin Lloyd, and said that her Louisiana attorney, an Honduran, interpreted and explained the leases to her.

As agreed in the pre-trial order filed in this cause, plaintiff introduced as exhibits certified copies of the following: (1) United States Patent No. 470 from the United States of America to Marmaduke Gardner; (2) warranty deed from T. J. Evans to E. J. McGowan; (3) warranty deed from J. W. McGowan to E. J. McGowan; (4) deed of trust signed by E. J. McGowan, H. E. McGowan and J. W. McGowan, dated December 18, 1915, in which E. J. McGowan was recognized as the owner of the tract involved herein; (5) a mineral lease to J. E. Toney, Trustee, dated December 26, 1939, a purportedly signed by E. J. McGowan; (6) "Report of the Death of an American Citizen," reflecting that a copy was sent to Obdulia McGowan, Calle 5, Casa 6226, Juan Diaz, Panama, as wife of the deceased, and to H. E. McGowan, Vosburg, Mississippi, brother of the deceased; (7) original Passports—E. J. McGowan, U.S.A. No. 452298–1927 and U.S.A. No. 1061–1945; (8) original Passport—Obdulia C. de McGowan, Honduras, No. 12980–1951; (9) an original Oil, Gas and Mineral Lease, dated February 1, 1971, from Dorotea Zaldivar V. De Tenorio to W. Baldwin Lloyd; (10) an original Oil,

Gas and Mineral Lease, dated March 20, 1971, from Dorotea Zaldivar V. De Tenorio to W. Baldwin Lloyd; (11) Treaty Between the United States and Honduras; (12) Tax Assessment and Tax Receipt Information from 1909 through 1971 pertaining to the 37 acre tract; (13) Specimen tax receipts pertaining to the 37 acre tract; (14) Intestate succession proceedings of John Elbert McGowan, in Spanish with an English translation; (15) that part of the complaint in H. E. McGowan v. Charles B. McGowan, et al., No. 7852 on the docket of the Chancery Court of Clarke County, Mississippi, deemed by plaintiffs to be an admission against interests. Defendants, having objected to the admission of a portion of the complaint, were allowed to introduce the entire record in said cause.

By agreement of the parties, Peter K. Smith, guardian, was permitted to introduce as exhibits certified copies of the following: (1) Decree Appointing Guardian in Cause Nos. 8315, 8316, and 8317, respectively, as docketed in the Chancery Court of Clarke County, Mississippi; (2) Decree Authorizing Guardian to Execute Oil, Gas and Mineral Lease in each of the above numbered cases; (3) an Oil, Gas and Mineral Lease, dated February 16, 1971, by Peter K. Smith on behalf of each minor ward, to Corsair Petroleum Corporation; (4) Assignment of Overriding Royalty Interest, dated February 25, 1971, by Corsair Petroleum Corporation, to Paul M. Neville; (5) Assignment of Overriding Royalty Interest, dated April 13, 1971, by Corsair Petroleum Corporation to W. C. Falkenheimer; (6) Assignment of Overriding Royalty Interest, dated February 22, 1971, by Corsair Petroleum Corporation to J. Logan Sewell; (7) Assignment of Overriding Royalty Interest, dated June 8, 1971, by Corsair Petroleum Corporation to James E. Conn; (8) Assignment of Overriding Royalty Interest, dated July 13, 1971, by Corsair Petroleum Corporation to Alice B. Scroggins; and (9) a quit claim deed dated May 3, 1971, from Felipe Murillo Zaldivar to Elbert John McGowan, James Patrick McGowan and Louis Harold McGowan.

At the conclusion of plaintiffs' case, the defendants' moved to exclude the evidence and direct a verdict for the defendants on the grounds that plaintiffs failed to prove that the treaty between the United States and Honduras should be construed favorably to the non-resident alien plaintiff, and that plaintiffs had failed to overcome the affirmative defenses of the defendant contending that H. E. McGowan acquired the fee simple title to the 37 acre tract involved by virtue of the Clarke County confirmation of title suit based on more than ten years' adverse possession. The Court overruled the motion.

Defendants introduced into evidence certified copies of (1) a Panamanian Certificate pertaining to the Succession of Elbert John McGowan, Intestate, together with an English translation, for the purpose of showing that the Mississippi property was not included in the deceased's estate; (2) an assignment, signed by J. D. Haynes, C. B. Brashier, H. E. McGowan, W. L. Bounds, and J. E. Toney, Sr., Trustee, on September 10, 1941, assigning "various gas and oil leases covering certain acreage owned by divers persons in Clarke County" to J. E. Toney, Sr.; and (3) the entire court file in H. E. McGowan v. Charles B. McGowan, et al., No. 7852, in the Chancery Court of Clarke County, Mississippi. Defendants also introduced into evidence, without objection, the depositions of Henry Ernest Culbreth, W. B. Holland, C. L. Sanders and Hayden Henson, long-time neighbors and friends of defendant, H. E. McGowan, who testified as to H. E. McGowan's management of the McGowan properties. Defendants offered into evidence the deposition of Judge M. M. McGowan, brother of H. E. McGowan, defendant. The deposition was objected to by plaintiffs and was marked for identification only, the objection being that M. M. McGowan was incompetent to testify against the interests of either E. J. McGowan, de-

ceased, or Maria Obdulia Zaldivar Mc-Gowan, deceased, under Section 1690 of the Mississippi Code, commonly referred to as the "dead man's statute." M. M. McGowan has filed a disclaimer in this action avowing that he has no claim or interest in the 37 acre tract.

Defendants' only live witness was Mrs. C. L. Lightsey, daughter of defendant H. E. McGowan. She stated that he was ill at the time of the trial and unable to testify. Until her marriage, she lived with her parents, defendant H. E. McGowan and wife, on their Vosburg, Mississippi, farm, formerly owned by her grandfather, J. W. McGowan. She knew and was familiar with H. E. McGowan's brothers and sisters, except for E. J. McGowan, whom she saw one time in her life when he visited the Mississippi farm for a short time in 1936 on the death of J. W. McGowan. She is familiar with the land involved in this suit saying it was a quarter of a mile from her father's home. She stated her father, for many years, had claimed this land and farmed it, and that, when E. J. McGowan left Mississippi in 1936, he told her father he would never be back. She stated that he did not return, and her first knowledge of him thereafter was when her father received the notice of his death from the American Consulate in Panama. As to a mineral lease, introduced into evidence as Plaintiffs' Exhibit 5, to J. E. Toney, Trustee, dated December 26, 1939, purportedly signed by E. J. McGowan, witnessed by H. E. McGowan and one G. W. Mason, and acknowledged before the Chancery Clerk of Clarke County, she stated that E. J. McGowan was not in Mississippi in 1939.[3] She did acknowledge that her father bought and sold oil leases for as long as she could remember, and had worked up a block of leases for Mr. Toney for which her father was paid ten cents an acre. The witness stated that for twenty years she had handled the

payment of taxes for her father on his farm properties, including the two separate pieces composing the 37 acre tract. She admitted that the 27 acres acquired by E. J. McGowan from T. J. Evans in 1911 was assessed to E. J. McGowan in 1913, and continued to be assessed to E. J. McGowan until 1958, when it was assessed to E. J. McGowan Estate, and that in 1969 the assessment was changed to H. E. McGowan, her father, as the result of the state court confirmation suit. Although Plaintiffs' Exhibit 12, being a list of these assessments, reflects that the assessed owner paid the taxes, the witness said that the taxes had actually been paid by her father, and that in 1957 or 1958, she personally requested the Sheriff to change the assessment to her father. He refused. The remaining 10 acres, which E. J. McGowan acquired from his father, J. W. McGowan, are shown by Plaintiffs' Exhibit 12 to have been assessed to E. J. McGowan from 1913 to 1918; from 1921 to 1941 assessed to J. W. McGowan; and from 1942 to 1971 assessed to J. W. McGowan Estate. The exhibit does not reflect that this assessment has ever been changed to H. E. McGowan. It does reflect that the taxes in 1957 and 1958 and from 1964 to 1971 have been paid by H. E. McGowan, which the witness said she paid in her father's name. On cross-examination, the witness stated that from the time of the death of her grandfather, J. W. McGowan, in 1936, her father, H. E. McGowan, has managed the family properties, including his own property, the home place which he acquired from J. W. McGowan, and including the 37 acres owned by E. J. McGowan; that her father farmed on the land through tenants and treated all as one farm unit. She admitted that her father had never remunerated any moneys to E. J. McGowan for the use of the 37 acres, but that neither had E. J. McGowan ever paid a dime on the taxes.

---

3. By stipulation, the parties agreed that at the time this lease was recorded, the Chancery Clerk's office had no photostatic equipment, and that all handwriting in an instrument for recordation was in the handwriting of the Clerk.

The four neighbors of H. E. Mc-Gowan, whose depositions were taken by the defendants, testified generally that each had known the McGowan family for many years; that E. J. McGowan, after going to Central America in 1911, had returned to the United States, no more than twice, the last time being in 1936 when his father died; that H. E. McGowan had farmed all the McGowan properties as one unit, including the 37 acre tract involved herein, and had maintained same under fence. They were not familiar with the record title, nor the manner in which the taxes were assessed or paid.

## CONCLUSIONS

There are three basic issues in this case. Plaintiffs contend (1) that E. J. McGowan's title was not lost by the claimed adverse possession of H. E. McGowan; (2) that, in the absence of state court process to E. J. McGowan's widow, her heirs are not barred by the state court condemnation suit; and (3) a liberal interpretation of the Treaty between the United States and the Republic of Honduras does not require a forfeiture of the widow's interest by her failure to sell her interest prior to her death in 1969. The defendants contest each of these assertions, and, in their pleadings, additionally asserted a parol gift of the property from E. J. McGowan to H. E. McGowan in 1936 and claimed that the non-resident aliens are precluded from acquiring title to land in Mississippi by state statute. As to the latter claim, this Court, in an opinion by Judge Walter L. Nixon, Jr., dated November 10, 1971, pointed out that treaty provisions which would produce different or conflicting results will prevail over local or state law. As to the claim of a parol gift, this Court finds that defendant, H. E. McGowan, wholly failed to overcome the burden of establishing such a gift by clear and convincing proof, much less by judicial determination until his confirmation suit. Aside from such allegation in his state court confirmation suit, this record is silent as to any evidence of such a gift. To the contrary, the signature of E. J. McGowan, witnessed by H. E. McGowan, on the 1939 mineral lease to J. E. Toney, Trustee, whether genuine or a forgery, belies the claim that the property was then owned by H. E. McGowan under any kind of title.

In his state court confirmation suit, H. E. McGowan averred, in part as follows:

"Your Complainant would show that since the purchase of the land by the said E. J. McGowan from his uncle, T. J. Evans, in 1911 that he, your Complainant, has had the exclusive control, use, occupation and management of the said land. That he farmed it each and every year, and never at any time attorned to his brother or paid him anything for the use thereof; neither was the same expected or required of him.

Complainant further says that he paid all ad valorem taxes upon the land and has paid the same since his brother purchased the land in 1911 when he was away from home working on the Panama Canal, as aforesaid. Thus, for fifty-seven years between 1911 and this date Complainant has paid all the taxes and had exclusive use of the same, farming, tilling or renting the same out for the purpose of farming and tilling at all times. However, Complainant admits that he was, between 1911 and 1936, performing all of these duties without claiming title to the land as a favor to his brother and for the use of the said lands.

Complainant would show that since the year 1936, a period of thirty-two years heretofore, he has been in the actual, exclusive, continuous, uninterrupted, adverse possession of said lands, claiming the same as his own, and each year keeping the land fenced and either farming it himself or through tenants, all of whom attorned to him, your Complainant. Your Complainant therefore claims and owns the land as his very own and

has, as aforesaid, been in the open, notorious, continuous, exclusive, uninterrupted and hostile possession thereof as against the said E. J. McGowan or any unknown heirs who might claim through him."

The testimony and admissions of facts received in this case show conclusively that H. E. McGowan's management of the E. J. McGowan property was in the same manner as he managed his own from 1911 to 1968, the date of the confirmation suit. Nothing occurred to change his fiduciary relationship to his brother until possibly the death of his brother in 1957 when, as H. E. McGowan alleged in his state court suit, he believed that his brother was not lawfully married despite having received consular notice of his brother's death with the widow's name and address appearing thereon. Certainly when one enters into possession of land with the permissive agreement of the record owner, the presumption is that the possession continues to be permissive and not hostile. Adverse possession entirely excludes the idea of a holding under the true owner. It is elementary that adverse possession cannot be permissive. Conversely, permissive possession cannot be adverse. As stated above, there is nothing in this record to change the admission of H. E. McGowan's permissive use and possession up to 1936 to that of adverse and hostile at least until 1957 when he received notice of his brother's death, if then. The possession necessary must be actual, open, adverse and hostile, as well as inconsistent with the existence of title in another. See 3 Am.Jur.2d, "Adverse Possession", Sec. 3, p. 83. See also Sec. 49, Ibid, wherein it is stated that permissive occupation of a family estate by one of the family is so usual that acts of occupation thereof to show hostile possession as to strangers are not sufficient as to relatives, and in Sec. 147, Ibid, wherein it is stated that the existence of a family relationship between the parties will prevent or rebut a presumption of adverse holding.

As to plaintiffs' second claim, they contend that the default decree taken in H. E. McGowan's confirmation suit filed in 1968 based on a claim of adverse possession from 1936, the year E. J. McGowan returned to Central America, up to the time the suit was filed, was ineffective as to Maria Obdulia Zaldivar McGowan for lack of due process of law guaranteed by the Fifth and Fourteenth Amendments, citing, among other cases Robinson v. Hanrahan, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47. This Court agrees. Other than process had on named defendants, with their addresses given, which did not include Maria Obdulia McGowan, the remaining process was had by publication only, addressed to: "The unknown heirs, devisees and executors, if any, of E. J. McGowan, deceased, whose where abouts, places of residence, and post office addresses are unknown." This publication appeared once a week for three consecutive weeks in The Clarke County Tribune, a newspaper published in the town of Quitman, Clarke County, Mississippi. In Magnolia Textiles v. Gillis, 206 Miss. 797, 41 So.2d 6, the Mississippi Supreme Court cited with approval the general rule that all persons who are materially interested in the event or subject matter, without whom no effective judgment or decree can be rendered, should be made parties in a suit to quiet title, and quoted from Griffith's Mississippi Chancery Practice, Sec. 115 thusly: "In suits to cancel clouds the complainant . . . may proceed against those of his own choosing, subject to the requirement, of course, that when he chooses to attack a particular cloud or claim of title he should join all those interested in that specific and particular claim . . .". In Warren v. Clark, 230 Miss. 873, 94 So.2d 323, the Court reversed a lower court's decision for the complainant where the complainant failed to deraign title from a common source to necessary parties *and did not allege that he had joined all parties interested in the land so far as they were known to him and could be ascertained by diligent inquiry,*

and where owners of one of the tracts involved purchased from a common source and had not been made parties to the suit. It is unfortunate here that H. E. McGowan believed his brother to be unmarried, and, although he had been informed of the widow's name and Panama address, made no effort to locate her, or have process directed to her by name at her last known address. On the basis of the above stated facts and law, this Court finds that Maria Obdulia Zaldivar McGowan, living at the time of this suit and decree entered therein, was deprived of her right to due process and that the confirmation suit decree was ineffective as to her and her legal heirs. This finding and conclusion is based, of course, on the further finding that their rights were not cut off by the hereinafter discussed treaty.

Article I of the Treaty between the United States and Honduras contains in part the following:

"The nationals of each High Contracting Party *shall enjoy freedom of access to the courts of justice of the other on conforming to the local laws, as well for the prosecution as for the defense of their rights, and in all degrees of jurisdiction established by law.*

"The nationals of each High Contracting Party *shall receive* within the territories of the other, upon submitting to conditions imposed upon its nationals, *the most constant protection and security for their persons and property,* and shall enjoy in this respect that degree of protection that is required by international law. *Their property shall not be taken without due process of law and without payment of just compensation.* (Emphasis Added)."

Plaintiff relies heavily on a liberal construction of the emphasized portions as well as the emphasized portion of Article IV which is as follows:

"Where, on the death of any person holding real or other immovable property or interests therein within the territories of one High Contracting Party, such property or interests therein would, by the laws of the country or by a testamentary disposition, descend or pass to a national of the other High Contracting Party, whether resident or non-resident, were he not disqualified by the laws of the country where such property or interests therein is or are situated, *such national shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary. . . .*" (Emphasis Added).

 Section 842 of the Mississippi Code of 1942 holds in part that non-resident aliens shall not hereafter acquire or hold land, and that all land held or acquired contrary to the statute shall escheat to the state. Aside from the statute, it is clear that under the common law of Mississippi a non-resident alien could not *inherit* lands from a resident citizen. See Scottish American Mortgage Co. v. Butler, 99 Miss. 56, 54 So. 666. An alien could take title by grant or devise, but not by descent. The statute further limits the rights of aliens, providing that they cannot acquire lands by any means, such as purchase or grant. Two exceptions to the statute for the benefit of aliens who are citizens of Syria or the Lebanese Republic are not involved herein. It is also clear that where there is a conflict between a treaty and the provisions of a state constitution or of a state statute, the treaty controls. As well as its statutes, the provisions of the common law of the state may be suspended during the existence of a treaty inconsistent therewith. See 52 Am.Jur., "Treaties", Sec. 18, p. 816. Also see Clark v. Allen, 331 U.S. 503, 67 S.Ct. 1431, 91 L.Ed. 1633, which considered language in a treaty with Germany identical to that here with Honduras. Also in 52 Am. Jur., "Treaties", Sec. 22, p. 819 it is said that while in force treaties are the supreme law of the land for like statutes so they are declared by the United States Constitution. "They are to be executed in the utmost good faith, with

a view to making effective the purposes of the contracting parties." Ibid, at page 823, it is further said: "In the solemn treaties between nations it never can be presumed that either state intends to provide the means of perpetrating or protecting frauds, but all provisions are to be construed as intended to be applied to bona fide transactions. Treaties should be so construed as to uphold the sanctity of public faith." And again in the same authority, at page 825: "Liberality is one of the foremost of the rules of treaty interpretation. Indeed, treaties are construed more liberally than private agreements. It is the general rule of construction with respect to treaties that they shall be liberally construed so as to carry out the intention and purpose of the parties. Accordingly, where a treaty admits of two constructions, one restrictive of rights that may be claimed under it and the other favorable to them, the latter is to be preferred."

It is clear under the treaty involved herein that Maria Obdulia Zaldivar McGowan had the right to acquire realty in Mississippi by inheritance, notwithstanding the common law and statute of Mississippi to the contrary. It is not so clear that her next of kin were entitled to acquire this same inheritance when she died intestate. As to this point, in the absence of specific language in the treaty providing for this eventuality, the Court is inclined to construe the treaty liberally and hold that such heirs are entitled to the same protection under the treaty as their deceased kinswoman would have had. Nor does this Court have much judicial precedent to aid in determining under what circumstances the three year period for selling the property should be reasonably prolonged. The Court has, however, carefully weighed all of the circumstances and finds that the interest of E. J. McGowan's widow could not be divested from her in the absence of due process of law and without just compensation, both of which are guaranteed by the treaty. Otherwise is to declare a forfeiture which is not favored in law. Maria Obdulia Zaldivar McGowan had no knowledge of the provisions of the treaty or any knowledge of her inheritance or the attempted divestiture. Similarly, her heirs, plaintiff and Felipe Murillo Zaldivar, had no knowledge. Until they were made aware of their interest, the circumstances were such as to require a prolongation of the three year period in which to divest themselves of their inherited interests. The brother, Felipe Murillo Zaldivar, has within a necessarily prolonged term divested himself in favor of the minor wards of Peter K. Smith, at one time in this action alleged to be the grandsons of E. J. McGowan. The named plaintiff, Dorotea Zaldivar V. De Tenorio, filed this suit within a reasonable time of her knowledge.

The Court therefore finds that the named plaintiff, a resident citizen of Puerto Cortes, Honduras, is entitled to a one-half undivided interest in and to the 37 acre tract of land, more particularly described in the early part of this opinion, subject to mineral leases executed in favor of W. Baldwin Lloyd, as recorded in the records of the Chancery Clerk of Clarke County, Mississippi; and that the minor grantees of Felipe Murillo Zaldivar, wards of Peter K. Smith, Guardian, are entitled to and vested with the remaining one-half interest, subject to mineral leases they have conveyed, also of record in Clarke County.

The Court reserves for a later hearing the matter of an accounting of funds due the respective holders of oil and gas leases and royalty interests, and for further relief.

An appropriate order may be submitted, costs of court to be taxed equally between the two groups of opposing parties. The order may further provide, in the event of appeal, that this opinion and the order rendered thereon are final for purposes of appeal, further conditioned upon the giving of a suitable supersedeas bond by the appealing party or parties.