Dorotea Zaldivar V. DE TENORIO,
Plaintiff-Appellant,

v.

Charles Lavell LIGHTSEY et al.,
Defendants-Appellees,

Peter K. Smith, etc., et al.,
Defendants-Appellants,

W. Baldwin Lloyd, Third Party
Defendant-Appellant.

No. 77–1242.

United States Court of Appeals,
Fifth Circuit.

Feb. 16, 1979.

Vardaman S. Dunn, Jackson, Miss., David A. Kattan, New Orleans, La., for De Tenorio.

Tally D. Riddell, Quitman, Miss., for McGowan, Burns, et al.

Jack H. Ewing, Jackson, Miss., for Love Pet. Co., et al.

Before GOLDBERG, Circuit Judge, SKELTON, Senior Judge *, and FAY, Circuit Judge.

SKELTON, Senior Judge.

The facts in this case are fully set forth in detail in an able and exhaustive opinion of Judge Coleman of this court in a prior appeal of this case, reported in 510 F.2d 92 (5 Cir. 1975), as follows:

"This is an appeal by Hamilton E. McGowan, the defendant below, and a

---

* Senior Judge of the United States Court of Claims, sitting by designation.

brother of Elbert J. McGowan, deceased, from a judgment vesting an undivided one-half interest in thirty-seven acres of land in Clarke County, Mississippi, in Doretea Zaldivar V. De Tenorio, a non-resident alien, *De Tenorio v. McGowan*, 364 F.Supp. 1051 (S.D.Miss.1973). Appellee De Tenorio claims the land by inheritance from her deceased sister, who, in turn, allegedly inherited the land from her deceased husband, Elbert J. McGowan. Both appellee and her deceased sister had been and were resident citizens of the Republic of Honduras.

"Appellant argues that the widow lost her interest in the land by failing to comply with the requirements of a 1928 Treaty between the United States and the Republic of Honduras. He asks that title be confirmed in the defendants-cross-complainants.

\* \* \* \* \* \*

"In 1911, by deed of conveyance, Elbert J. McGowan became the owner of twenty-seven acres of land in Clarke County, Mississippi. In 1915 he acquired, by deed, ten additional acres. These parcels constitute the thirty-seven acres here in question.

"Both deeds were properly recorded in the land deed records of Clarke County, Mississippi, on December 20, 1915. The District Court found that these conveyances vested E. J. McGowan with the fee simple *record* title to this land.

"Between 1911 and 1914 E. J. McGowan left Mississippi and returned only twice, the last time in 1936. This was the last contact any member of the family is known to have had with him during his lifetime.

"After leaving Mississippi, E. J. McGowan returned to Central America, where, in 1940, he married Maria Obdulia Zaldivar, of Honduran nationality. Although there originally were claims to the contrary, abandoned during the course of this litigation, no children were born of this union. E. J. McGowan remained a United States citizen, but died intestate on October 31, 1957, in the Republic of Panama.

"Hamilton E. McGowan, of Vossburg, Mississippi, was a brother of Elbert J. McGowan. Elbert's United States passport designated Hamilton McGowan as the person to be notified in case of his death. In 1957, Hamilton was so notified by the United States Consul in Panama. This notification revealed that Elbert's effects had been placed in the hands of his widow, and listed other known relatives as two brothers, Hamilton E. McGowan, of Vossburg, and M. M. McGowan, of Jackson, Mississippi. After Elbert's death, no member of the family communicated with his widow or undertook to advise her concerning any land E. J. McGowan owned in the State of Mississippi. Neither did she, or her counsel, communicate with the McGowans. Silence reigned supreme on both sides.

"In 1958, after the death of her husband, Maria Obdulia Zaldivar McGowan left Panama, went back to Honduras, and lived there with her sister, the plaintiff-appellee here, until her death. While thus residing in the Republic of Honduras, Maria died intestate on February 28, 1969, without being remarried or having any children. At no time did she ever renounce her Honduran citizenship. She was survived by one sister, appellee De Tenorio, and one brother, Felipe. Maria's other brothers and sisters were of the half blood, and neither of her parents survived her death.

"It is undisputed that the taxes on the lands in question were never paid by Elbert J. McGowan, but were always paid by his brother, Hamilton E. McGowan. In addition to paying the taxes, Hamilton E. McGowan used the land, retained the profits, and acknowledged his brother's ownership of the land in a number of ways, such as failing to have the tax assessment changed to him as owner and by subscribing as a witness to an oil and gas lease purportedly executed by E. J. McGowan in 1939.

"In 1968, Hamilton E. McGowan filed suit in the Chancery Court of Clarke

County, Mississippi, asserting title in himself by adverse possession and seeking confirmation of his alleged title to the land. Elbert's widow, Maria Obdulia Zaldivar McGowan, was living at the time in the Republic of Honduras, but she was not named as a party to the suit, nor was she served with notice or process. A decree was entered on the complaint by default. This decree was asserted by the defendants-appellants in the District Court as *res judicata.* The Court held that this decree was ineffective against Maria, Elbert McGowan's widow and appellee's sister, for lack of due process of law guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States, and applicable under the terms of the Treaty between the United States and Honduras. This holding is not challenged on appeal. The District Court further held that Maria Obdulia Zaldivar McGowan's interest in the land formerly owned by her husband, Elbert, could not be divested from her in the absence of *due process of law* and *without just compensation.* It concluded by a 'liberal interpretation' of the Treaty that Maria's heir, Dorotea, was entitled to the same protection." 510 F.2d 94–95.

Further pertinent facts are set forth in Judge Coleman's discussion of the law, as follows:

"The applicable Mississippi statute, Section 842 of the Code of 1942 [now Section 89–1–23 of the Code of 1972, which goes back to Section 2439 of the Mississippi Code of 1892] provides:

'Resident aliens may acquire and hold land and may dispose of it and transmit it by descent, as citizens of the state may;

but non-resident aliens shall not hereafter acquire or hold land * *.'

"This statutory provision yields, of course, to any applicable provision of any valid Treaty of the United States with a foreign country, constituting a part of the Supreme Law of the Land, United States Constitution, Article 6, Clause 2,

*Hauenstein v. Lynham,* 100 U.S. 483, 25 L.Ed. 628 (1879); *Clark v. Allen,* 331 U.S. 503, 67 S.Ct. 1431, 91 L.Ed. 1633 (1947).

"The pertinent portions of the 1928 Treaty with Honduras read as follows:

\* \* \* \* \* \*

'Article IV

'Where, on the death of any person holding real or other immovable property or interests therein within the territories of one High Contracting Party, and such property or interests therein would, by the laws of the country or by a testamentary disposition, descend or pass to a national of the other High Contracting Party, whether resident or non-resident, were he not disqualified by the laws of the country where such property or interests therein is or are situated, such national shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary * * *.'

"By the express provisions of the Treaty, McGowan's widow had until October 31, 1960, in which to sell the thirty-seven acres of land in Clarke County. The term for the exercise of that right might 'be reasonably prolonged if circumstances *render it necessary.'* (emphasis ours).

"Prior to the cut off date, Mrs. McGowan took no action to sell the property, nor did she do so during the ensuing nine years. Indeed, although the record shows that Mrs. McGowan, the widow, was represented by counsel in closing her husband's affairs she died without making any inquiry or taking any action to sell the land.

"The case, then is reduced to whether under the Treaty the sister was entitled to a 'reasonable prolongation' of the sale period, *rendered necessary by the circumstances.*" 510 F.2d 95–96.

\* \* \* \* \* \*

" * * * The laws of Mississippi flatly provided that the Widow McGowan could not inherit the land. The record is totally devoid of the slightest suggestion that

Hamilton McGowan had ever heard of the Honduran Treaty of 1928." 510 F.2d 97.

\*    \*    \*    \*    \*    \*

"We have already pointed out that from October 31, 1957, until February 28, 1969—eleven years and four months—Mrs. McGowan made no effort to take any action whatever by sale or otherwise, with reference to the property inherited, with limitations, from her deceased husband.

"On what theory is it to be held, then, that this long term of inaction, almost four times the primary term prescribed by the Treaty, may at this late date be judicially prolonged as 'a matter rendered necessary by the circumstances?'

"The only reason advanced is that the widow McGowan did not know of the property owned by her husband, did not know the rights conferred upon her by the Treaty, and Hamilton McGowan failed to inform her of it, although, as already stated, there is no proof that he, a layman residing in Mississippi, had any knowledge of the Treaty.

"It seems likely that Mrs. McGowan did not know of the land, but the only proof to support this conclusion is the testimony of her sister, the present claimant to the property, who said that Mrs. McGowan never mentioned the existence of Mississippi or any property in it.

"Balanced against this is the fact that when her husband died in Panama, there was an intestate succession [administration] in that jurisdiction, in which the widow received all of her deceased husband's property in that jurisdiction, *and was represented by counsel.* Living with her husband, an American, for eighteen years she is bound to have known that her husband had a United States passport, especially since the record indicates that she had one also. In any event, the Consular report of his death named her as his heir and named the two brothers and their addresses in Vossburg and Jackson, Mississippi, as surviving relatives. If the United States Consul obtained this information from some source other than the widow, who was the only person in Panama who could have told him of it, she at least was put on notice of it when she received as she did a copy of the Consular report.

"Conceding, however, that the widow knew nothing of the land owned by her husband the record leaves no room for doubt that she knew he had brothers in Mississippi and, if she was interested in the subject, that he might have land there." 510 F.2d 98.

\*    \*    \*    \*    \*    \*

"It is urged that under the facts of this case Hamilton McGowan was 'fiduciary' to the widow of his deceased brother. For reasons quickly to be stated we hold that Hamilton was not a fiduciary to his former sister-in-law.

"Prior to October 31, 1957, the date of Elbert's death, such a relationship could not have arisen because Elbert was the sole owner of the Clarke County property, acting in his own right. Before Hamilton McGowan so much as knew of the existence of a sister-in-law (which was learned from the Consul's death report), the relationship had been dissolved when Elbert died childless, *Wilbe Lumber Company v. Calhoun,* 163 Miss. 80, 140 So. 680 (1932). Mrs. McGowan was an adult, not a lunatic, and personally a total stranger to her former brother-in-law. Neither before nor after October 31, 1957, did Hamilton McGowan see Mrs. Elbert McGowan or have the first word of communication with her, directly or indirectly, written or oral. In this set of circumstances a fiduciary relationship was totally nonexistent."

\*    \*    \*    \*    \*    \*

"Consequently, Hamilton McGowan was neither a tenant in common nor a joint tenant with his former sister-in-law." 510 F.2d 100.

The district court held that the failure of Hamilton McGowan to give his sister-in-law actual notice of the existence of the land and of her Honduran Treaty rights estab-

lished the required "necessity" for the prolongation of the three-year term in which she could have sold the land. That court also held that this "necessity" would continue until someone should give actual notice to the alien inheritor of the land or to those who inherit the land from such alien. The district court entered judgment for the plaintiff, holding that she was the owner of the land. This court, speaking through Judge Coleman, on the appeal of the case, reversed and remanded it for further proceedings not inconsistent with the decision of this court.[1]

Upon remand of the case defendant moved, in the district court, in February of 1976, for an order directing plaintiff to show cause why defendant should not be adjudicated owner of the property involved and a Final Judgment to that effect so entered. The plaintiff responded by orally moving for leave to amend her pleadings. The motion of defendant to file a Final Judgment was denied, and the plaintiff was allowed to file her Amended Complaint. Defendant then filed a Motion to Strike that Amended Complaint on the ground that the new pleadings offered no matter or issue not considered by the district court, this court, or the Supreme Court.[2] On October 6, 1976, the District Court, by written opinion, found that the amended pleadings, if accepted as true, offered no new allegations, evidence, or different theory of recovery not met by the appellate court, that the motion of defendant to strike was well taken; and that an appropriate final judgment should be submitted with all court costs taxed to plaintiff. Final judgment was accordingly entered on December 3, 1976, vesting fee simple title and ownership of

the land in defendant and taxing the costs against the plaintiff. The case now before us is an appeal by the plaintiff from that judgment.

In writing the opinion of this court in the prior appeal of this case, Judge Coleman, after describing the facts and making findings thereon, and after discussing the Mississippi land laws and the provisions of the Treaty, held:

"  *   *   * all the parties here had their full day in Court and there was no denial of due process. The due process argument, therefore, is irrelevant.

"This remands us to the decisive factor in the case, the application of the pertinent provisions of Article IV, which, stripped of inapplicable language, might appropriately be defined as follows:

'Where, on the death of any person holding real or other immovable property or interests therein within the territories of one High Contracting Party, *   *   * such national shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary  *   *   *.'

"We construe 'circumstances rendering the action necessary' to mean circumstances existing during the three year period, such as an inability to satisfactorily clear title, an inability to sell for fair market value, wilful frustration of the effort to sell, and like events." 510 F.2d 87–98.

Judge Coleman held further:

"Represented by counsel, as she was, in an estate which was formally administered in Panama, we must hold that Mrs.

1. This case has run the full course of our federal judiciary. Originally, the District Court found that the title to the property in question was vested in the plaintiffs. *De Tenorio v. McGowan*, 364 F.Supp. 1051 (D.C.Miss.1973). That judgment was then appealed to this court, which reversed the decision of the lower court and remanded the cause "for further proceeding not inconsistent herewith." *De Tenorio v. McGowan*, 510 F.2d 92 (5 Cir. 1975). Thereafter, plaintiffs filed a Petition for Rehearing and a Petition for Rehearing En Banc. In a Per Curi-

um written opinion, both Petitions were denied. *De Tenorio v. McGowan*, 513 F.2d 294 (5 Cir. 1975). Petition for Writ of Certiorari to the United States Supreme Court was also denied. *De Tenorio v. McGowan*, 423 U.S. 877, 96 S.Ct. 150, 46 L.Ed.2d 110 (1975).

2. Dorotea Zaldivar De Tenorio and those claiming under her and a brother will be referred to as the plaintiff. Hamilton McGowan and those claiming under him will be referred to as the defendant.

McGowan's failure over a period of nearly twelve years to have the records examined, or to make any inquiry whatever, although assisted by counsel, totally negates the existence of *circumstances necessitating* a prolongation of the three year period in which she had the clear right to sell this land and receive the proceeds." 510 F.2d 99.

In discussing the facts, Judge Coleman stated, as quoted *supra*, that "we hold that Hamilton [the defendant] was not a fiduciary to his former sister-in-law." With further reference to the lack of such fiduciary relationship the opinion stated:

"Consequently, Hamilton McGowan was neither a tenant in common nor a joint tenant with his sister-in-law. His interest conflicted with hers to the extent that he could only hope for title in fee if she failed to exercise her right of disposition in compliance with the Treaty. The fiduciary principles usually applicable to such tenancies in common simply did not apply here. In the total absence of an agreement to the contrary, the hostility of Hamilton's interest to that of his sister-in-law was the antithesis of a fiduciary relationship. No law could require him to aid a total stranger to defeat his own title.

"Neither does the fiduciary argument attribute proper significance to the indisputable fact that under Mississippi law real property could not be inherited by a Central American alien. If Hamilton McGowan acted in reliance on the Mississippi statute prohibiting inheritance of real property by aliens, and if he did not know of the Honduran Treaty, then he was guilty of no intentional dereliction for, in the absence of the Treaty, no duty could have existed. The record in this case is totally bare of any evidence of treaty knowledge on the part of Hamilton." 510 F.2d 100.

Finally, we held in our prior opinion:

"Accordingly, we hold that the primary term in which Mrs. McGowan could have exercised the Treaty right of disposal expired on October 31, 1960; that during that time frame, and for the remaining eight years of her life, no existing necessity was claimed by her for the prolongation of the three year period. Neither have the subsequent heirs established any such necessity. The total inaction reflected by this record cannot, by some kind of judicial wand waving, be converted into 'a necessity.'" 510 F.2d 101.

When the case was remanded to the district court and the plaintiff was allowed to file an amended complaint, the amendment that was drafted and filed by the plaintiff was admittedly framed in such a way that it attempted to comply, for the most part, with the criteria laid down in our prior opinion that would justify the prolongation of the three year period that Mrs. McGowan had the right to dispose of the land under the provisions of the Treaty. These criteria were:

" * * * an inability to satisfactorily clear title, an inability to sell for fair market value, wilful frustration of the effort to sell, and like events."

It is with this background then that we view the allegations of plaintiff's amended complaint, which pleads an inability to satisfactorily clear title, an inability to sell for fair market value, and a wilful frustration of any effort to sell which might have been made. The plaintiff contends that these facts, if true, are sufficient to meet the requirements set forth by Judge Coleman to extend the three-year period. We do not agree. The short answer to these allegations and arguments is that Widow McGowan never tried to clear the title to the land, never tried to sell it for fair market value, and was never wilfully frustrated in any effort to sell the land which might have been made, during the three-year period nor at any other time during her lifetime.

The plaintiff also alleged fraud and fraudulent concealment on the part of Hamilton McGowan, pointing to the suit he filed in chancery for title to the land and also his claim of parol gift of the land from Widow McGowan's husband. We held in our prior opinion that the suit in chancery was a nullity as far as Widow McGowan

was concerned because she was not made a party to the suit and had no notice of it. As to the parol gift contention, Hamilton McGowan dropped that claim long before this suit was filed and it has not been involved here. In any event, any so-called fraud on the part of Hamilton McGowan could not affect the outcome of this case because Widow McGowan did not know about it, if it existed, and could not have been misled by it.

The plaintiff also pleaded in the amended complaint that Hamilton McGowan held the land in a constructive trust for Widow McGowan. We held in our prior opinion that there was no fiduciary relationship between Hamilton McGowan and Mrs. McGowan. Consequently, there could not be a constructive trust. We also held that the two of them were not joint tenants nor tenants in common. They did not own the land at the same time. Hamilton McGowan inherited it when Mrs. McGowan lost her title upon the expiration of the three-year period. There are no valid allegations nor proof that support the trust theory.

The plaintiff also alleges that the Mississippi statute prohibiting ownership of land by an alien was unconstitutional. We disposed of that argument in our prior opinion.

The case of *Guiseppe v. Cozzani*, 193 So.2d 549 (Sp.Ct., Miss.1967), is again urged by plaintiff in support of her amended claim. We held in our prior opinion that the cases are clearly distinguishable, as that case involved fraud between joint tenants and tenants in common, which facts are not present here.

It is fundamental that we are bound by the findings of fact made by this court in our opinion in the prior appeal of this case. Also, the court's conclusions of law in that appeal became the law of the case and must be applied here. Furthermore, we think Judge Coleman's opinion was correct.

Accordingly, we conclude that the plaintiff has presented nothing new in her amended complaint, and that all of her contentions were disposed of in our prior opinion, and that the district court was correct in striking it and in entering final judgment that defendant was the fee simple owner of the land in question, and that such judgment should be affirmed.

AFFIRMED.